## McLEAN *vs.* THE STATE.

1. Although it is the province of the judge, and not that of the jury, to determine whether the dying declarations of the deceased are admissible, in cases where the death of the deceased is the subject of the charge, yet where the whole subject was left to the jury, under the direction of the Court, and it was apparent that the accused had sustained no injury from the manner in which the declarations were introduced, the Court refused to reverse the judgment on account of such irregularity.

2. In capital cases, and, indeed, in all cases of felony, the jury, after they are sworn, should not be permitted to separate until they have rendered their verdict, and if permitted to separate, the judgment will be reversed.

*McLean* vs. *The State.*

ERROR to St. Louis Criminal Court.

BLENNERHASSETT, *for Plaintiff in Error.*

POINTS AND AUTHORITIES.

1. The court should have continued the trial of said cause until the January term, the affidavit of the said McLean, for that purpose, being entirely sufficient, and containing every allegation required by statute.   And, by reference to the testimony of Rucker, Coyers, and Hugh Rogers, the materiality of the testimony of Brown, on the account of whose testimony the motion was made, is apparent, and corroborates the truth of the affidavit.— People *vs.* Vermyllea, 7 Cow. 525; 6 Cow. Rep., 577; 5 Cow. Rep., 15.

2. The jury, after they are sworn, should not be permitted to have separated until they had rendered their verdict.   This is the rule in England, as also in this country.   In the case of the King *vs.* Stone, 6 Taunt. Rep., 530, which was an indictment for high treason, the court adjourned from night until next morning, the jury retired to an adjoining tavern, and bailiffs were sworn well and truly to keep the jury,—"neither to speak to them themselves, nor to suffer any other person to speak to them," &c.   And in Com. Digest, title, "Inquest F.," it is expressly laid down, that, after the evidence is given, the jury ought to continue together till they agree of their verdict, without eating, drinking, fire, or candle, or speaking with any one, &c.   Then cases of necessity, as an affray, the falling of the house, &c., are given as justifying the jury in separating.   In 4 Black. Com., 360, it is said, that when the evidence on both sides is closed, and, *indeed, when any evidence has been given*, the jury cannot be discharged (unless in cases of evident necessity,) till they have given in their verdict.— See also Gould's case in Fost., 27; Day's Rep., 287; 2 South. Rep., 827; Commonwealth of Virginia *vs.* McCant, Virginia Cases, 271; 2 Leigh. Rep., 750; Martin's case, Walker's Intro. to Am. Law, 640; 1 Cow. Rep., Smith *vs.* Thompson, 221, and note.

3. The court should have decided, as a question of law, whether the declarations of Floyd were admissible as evidence or not.   This was refused to be done, and left to the jury as a question of fact.— Greenleaf, 190, sec. 160; 1 chap. Cr. Law, 570; 1 Starkie's Rep., 521–3; 1 East. P. C., 360; *Ibid.*, 358; 3 C. and P., 629; 6 C. and P., 386; 7 C. and P., 187–190; 1 Hawks, 444; 1 Leach, 504; 14 Eng. Com. Law Rep., 474, note; *Ibid.*, 494.

4. The dying declarations of Floyd were improperly admitted; the evidence being insufficient to show that they were made *in extremis*, and under a sense of immediate dissolution.— Greenleaf, 188, sec. 158; *Ibid.*, 189, and cases in note 4; 1 East P. C., 357; 6 C. and P., 386; *Ibid.*, 631; 7 C. and P., 187; 2 Russel on Crimes, 685; 14 Eng. Com. Law Rep., 494.

5. The evidence introduced on the part of the State was insufficient to warrant a conviction.   If the fact, that the plaintiff in error assisted in digging Floyd's well, be omitted, the conviction then rests wholly upon the declarations of the

deceased; and though we may concede, for the sake of argument, that those declarations were properly before the jury, yet it must be recollected that the person to be affected by them was not present when they were made, had not the power of a cross-examination; and that, from the circumstances necessarily attending the commission of such an offence, such confusion and surprise must have existed, as could not but lead to mistakes as to the identity of persons, and the omission of facts materially important to the completeness and truth of the narration. —See Greenleaf on Ev., 192; 1 Phil. and Am. on Ev., 305, 6; 2 Johns. Rep., 356; 2 Poth. Obl., 255; 2 Starkie, 263.

S. M. BAY, *Attorney-General, for The State.*

POINTS AND AUTHORITIES.

1. That the court properly refused the second application for a continuance :—

1st : Because the accused, in his affidavit, did not show that he had·used due diligence to procure the attendance of Brown.

2d : Because the facts which the accused supposed he could prove by said Brown were immaterial.

2. The Criminal Court did not err in permitting the jury to separate:—

1st : Because, at common law, it is matter of discretion with the court whether the jury should be kept together until all the evidence is received, or whether they shall be permitted to separate.

2d : Because there is no evidence that the Criminal Court improperly or unsoundly exercised this discretion.— See The King *vs.* Worlfet et al., 1 Ch. Rep., 401, cited in 1 Cowen's Rep., 227; Statutes of Mo., 1835, title, " Practice and Proceedings in Criminal Cases," art. 6, sec. 14.

3. Although it is now settled that the court, and not the jury, are to decide whether, under the circumstances of the case, the dying declarations ought to be admitted, yet it is evident that the deceased considered himself, at the time he made the declarations, in a dying condition, and past all hope of recovery, and actually was in such condition.   Therefore, the evidence was clearly admissible, and the court will not reverse the judgment because the evidence was introduced in an irregular manner, particularly as it is not pretended that the defendant was not prejudiced by the manner in which the evidence was introduced.

4. Admitting that the declarations of the deceased were properly in evidence, then it is clear that the verdict is sustained by the evidence, for the declarations of the deceased, as to the identity of the defendant, and to the fact that the defendant was the person who gave him the mortal wound, are positive, and uncontradicted by any of the testimony.

5. The motion for a new trial was properly overruled, not only on account of the suspicious character of the testimony of Bartley, but of the utter insufficiency of the matter contained in the affidavit.

TOMPKINS, *Judge, delivered the opinion of the Court.*

At the September term of the Criminal Court for St. Louis county, the appellant, James McLean, was indicted for murder in the first degree, and at the November term of that court, next succeeding, he was tried and found guilty.

To reverse the judgment of the Criminal Court, this appeal is prosecuted.

In the bill of exceptions, it appears, that during the said term of November, to wit, on the 12th day of December, 1842, he prayed a continuance of his cause, and at the same time filed his affidavit, that one James Brown is a material witness for him, the defendant, and that he could not safely go to trial without the evidence of said Brown; that some two or three months since, the said Brown went to Galena on business, but with the intention of returning to St. Louis, his place of residence, on or about the first of November last past; that said Brown had not returned to St. Louis, and that the affiant had good reason to believe Brown would return at the next term of the court, &c.; that the affiant expected to be able to prove by said Brown, that he and Brown slept together in the stable of one Long, in the city of St. Louis, on the night that Gabriel Floyd, the deceased, was murdered, and for whose murder the affiant was indicted, from the hour of ten of the clock of that night till the next morning, when the affiant was arrested, &c. The court overruled the motion of a continuance, and proceeded on that day to empannel a jury. Seven jurors were sworn to try the issue, and the residue being challenged and set aside for cause shown, the marshal was ordered, forthwith, to summon thirty-six others to appear on the fifteenth day of said month of December. The seven jurors were left at liberty to go where they pleased, from the 12th day of said month of December till the 15th, the court charging them to hold no conversation with any person. Exceptions were taken to the refusal of the court to grant the continuance, and the action of the court in permitting the seven jurors to go at large as aforesaid. On the said 15th day of December, five other persons were sworn on the jury.

The first witness examined was the wife of the deceased: she stated, that about ten o'clock at night, of the 26th of August, 1842, she retired to rest, but did not sleep; that about half an hour after, she heard footsteps about the front door, and some person turning the lock; her husband got up, took his gun, and went to the door, and she went to the servants' room to call them to his assistance, and was met by two men, when she opened the door to let them out: one of them presented a pistol to her, and said if she spoke he would blow her through; saying they only wanted money, and asked how much they had, &c.: that when she saw her husband he was much cut and beaten, and had a stab in his left side; he asked her to lay him down on the bed; said he was dying. Here the counsel for the State desired the witness to relate what her husband said. To this the counsel for the prisoner objected, and insisted that, whether the declarations of the deceased should be given in evidence or not, was a question of law to be determined by the court; and that, in order to enable it to decide whether they were admissible, evidence should be given to the court whether the deceased regarded himself *in articulo mortis,* and past all hope of recovery, when he made

McLean vs. The State.

the statements now sought to be given in evidence. The court overruled the objection, and permitted the witness to proceed with her testimony. This decision of the court was excepted to, and the witness was permitted to proceed. She proceeded to state, that he was very faint, but recovered a little, and said he recognized the man *Mack*, who assisted in digging the well, and that he said, " *Damn you, I would not have dirked you if you had not resisted;*" that the deceased stated, that he recognized McLean as the man that beat him and stabbed him with the dirk. The deceased lived thirty-one hours after he was stabbed, and at various times before his death made these declarations. It is stated on the record, that here, the hour of adjournment having arrived, the court adjourned until the next day, and that the jury were allowed to separate and go at large, to which objection was taken, and the objection overruled. At the usual hour on the next day, the court met, and the examination of the witness was continued.

The witness stated, that the first time she saw her husband after he went out, he was standing in the bed-room, and he said, "I am dying, lay me down." He was then laid on the bed by the servants; he expressed no hopes of recovery, and seemed perfectly resigned: he was lying in bed when he made his statements, and witness presumed the deceased made his statements with a view to their being given in evidence.

Several other witnesses testified to the declarations of the deceased. From them, it appears, that on hearing the footsteps at his door, the deceased got up, and took his gun in his hand, and, when the door was opened, he was dragged out, (his gun having missed fire) and beaten with sticks; after the assailants ceased to beat him, he made his way into the house, he knew not how, and was stabbed after he had gotten into his bed-room. The witnesses all concur that while he made these statements, he also declared that he did not believe he should ever recover; called himself a dead man, &c. It was in evidence that the deceased lived betwixt three and four miles from the stable in St. Louis where the accused went to bed, as appears by the evidence of several witnesses, about ten o'clock of the night on which the murder was committed, and at which stable he was arrested the next morning.

After verdict and judgment, the defendant moved for a new trial, for the reasons following:—

1. Because the court permitted the seven jurors, first sworn and empannelled, to separate and go at large for several days.

2. Because the court did not keep the jury together, under the charge of an officer, until they delivered in their verdict.

3. Because the court refused to grant a continuance.

4. Because the declarations of the deceased were admitted in evidence.

The indictment had been found at the September term, and the continuance till the November term was almost a matter of course; and probably the continuance was as necessary to the State as to the prisoner. It would seem, then, that on so important an occasion, when a man's life was at stake, it was not very unreasonable to ask a continuance till the next succeeding term of the court.

In Greenleaf's Evidence, p. 190, sec. 160, it is said—"The circumstances

under which the (dying) declarations were made are to be shown to the judge, it being his province, and not that of the jury, to determine whether they were admissible. In Woodcock's case, (2 Leach's Cr. Cases, 557,) the whole subject seems to have been left to the jury, under the direction of the court, as a mixed question of law and fact; but subsequently, it has been held a subject exclusively for the consideration of the court, being placed on the same ground with the preliminary proof of documents, and of the competency of witnesses, which is always addressed to the court. But after the evidence is admitted, its credibility is entirely within the province of the jury, who, of course, are at liberty to weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give the testimony, upon the whole, only such credit as they may think it deserves."

The testimony of the first witness in the case was well calculated to mislead the judgment. The witness, wife of the deceased, said: "When I first saw my husband, he was much cut and beaten, and had a stab in his left side; he asked me to lay him on the bed, said he was dying," &c. The declarations of the deceased, testified to by other witnesses, were in like manner mingled with such declarations as these, viz.: that he was dying—was a dead man—or that he could never recover. And although it seems that no court could, on hearing these statements of the witnesses, hesitate to decide that the declarations of the deceased ought to have been received in evidence, yet, as the Criminal Court transgressed the rule of evidence, as it is now understood, in suffering these declarations to go to the jury before it had examined the witnesses, to enable it to determine whether they were *in articulo mortis;* and as, in a capital case, it seems to me improper for this Court to assume the authority to say, that the prisoner was not injured by this error of the Criminal Court, I am of opinion, that for this error, the judgment of that court ought to be reversed.

In a note to the case of Smith *vs.* Thompson, (1 Cowen, 244,) all the cases concerning the separation of jurors are reviewed. The result of all is, that a verdict will not be set aside merely because a jury have separated without leave of the court, when it has not been proved that they have been tampered with, or their verdict is not so inconsistent with the evidence as to raise the presumption of influence *aliunde;* and that in cases of misdemeanor, the jury may disperse with leave of the court. This is the result of the English cases; and it is there added that the American cases on this subject present nearly the same view of the question. But the better opinion, on considering all the cases cited in the note above mentioned, is, that in capital cases, and in cases of felony in general, the jury ought to be kept together; and that, although occasions may occur in cases of imminent danger, &c., on which jurors may be excused from fine for dispersion, yet it is the duty of the court to keep them under the charge of an officer when it is not in session. To the same purpose, see the case of The People *vs.* Douglass, 4 Cowen, 35.

Our statute provides that, "The proceedings prescribed by law in civil cases, in respect to the empannelling of jurors, the keeping of them together, and the manner of rendering their verdicts, shall be had upon trials on indictments and

prosecutions for criminal offences, except in cases otherwise provided by statute. — Section 14, article 6, of the act to regulate proceedings in criminal cases, p. 490 of the Digest of 1835.

It has not been suggested by counsel, nor has it been found on examination of our statute law, that the legislature has made any statutory provisions for keeping juries together in civil cases, or in trials on indictments and prosecutions for criminal offences. It seems, then, there is nothing in our statute on which the above-recited provision can act; and the consequence, therefore, is, that we are left as we were at common law.

The majority of the Court does not concur with me in opinion, that the judgment of the Criminal Court ought to be reversed, because that court suffered the declarations of the deceased to go to the jury before it took time to examine whether they were made under a sense of impending death, because no injury has been done to the prisoner by their admission in evidence. But all the Court concur in opinion, that a new trial ought to have been granted, because the jury, after being sworn, were permitted to go at large while the court was not sitting.

It was contended, that the weight of evidence was much against the finding of the jury. Nothing will be said on that subject, as it is but right that the jury should be uninfluenced by the opinion of the Court as to the weight of evidence, and because the judgment will be reversed on another point.

The judgment of the Criminal Court is reversed, and the cause will be remanded to that court, to be proceeded in conformably to this opinion.