The State v. Collins

## THE STATE v. COLLINS, *Appellant.*

| 86 | 245 |
|-----|------|
| 100 | 531 |
| 86 | 245 |
| 113 | 503 |
| 116 | 12 |
| 86 | 245 |
| 139 | 212 |
| 86 | 245 |
| 149 | 502 |
| 86 | 245 |
| 171 | 550 |

1. **The record** in this case held to correctly show all proper orders between a first and second trial of the cause, and that the indictment was signed by the prosecuting attorney.

2. **Practice, Criminal** : JURORS, PANEL OF. The fact that in a trial for murder, a panel of forty qualified jurors was procured on the sixth, when the cause was not to be tried until the tenth, constitutes no error, as the defendant or his counsel could have re-examined them on the tenth, if he had so desired, to ascertain whether any of them had become disqualified between the dates mentioned.

3. ———: SEPARATION OF JURY. The temporary separation of a juror from his fellows, the juror being under the charge of an officer while the others remained locked in their room, and nothing being said to such juror about the trial, constitutes no ground for a reversal of the judgment.

4. ———: JURORS : OBJECTION TO PANEL AFTER VERDICT. It is too late after verdict to object to the panel of jurors, or to the manner of its selection.

5. ———: INSTRUCTIONS. An instruction for murder in the second degree is properly refused where the evidence shows the offence to be murder in the first degree, or nothing.

*Appeal from Pike Circuit Court.*—HON. ELIJAH ROBINSON, Judge.

AFFIRMED.

*Clark & Tapley* and *Forrist & Fry* for appellant.

(1) The record proper does not show that any orders were made by the court, between the first and second trials, and fails to show that the indictment was signed by the prosecuting attorney. (2) The court erred in procuring a panel of forty qualified jurors on the sixth of March, when the trial was set for the tenth of March. The whole forty may have pre-judged the case between these dates. The case being set for the tenth, all process was returnable on that day. R. S., secs. 1903, 1904, 1906, 1907, 3722. (3) It was error to overrule appellant's motion to continue the cause. R. S., sec. 1848; Const. of Mo., art. 2, sec. 22; *State v. Hickman,* 75 Mo. 419, *et seq.* (4) The court erred in its definition of deliberation and in failing to define the term provocation. *State v. Kotovsky,* 74 Mo. 249, and cases cited. (5) The court erred in not giving an instruction for murder in the second degree, and in regard to the law of self-defence. (6) The cause should be reversed because of the separation of the jury. The statute is peremptory and itself stands for a reason. R. S., sec. 1907; *State v. Collins,* 81 Mo. 652.

*B. G. Boone,* Attorney General, for the state.

(1) The indictment is sufficient. Whar. on Hom. (2 Ed.) sec. 791; *State v. Steeley,* 65 Mo. 218; *State v. Ward,* 74 Mo. 253. (2) The remarks made by counsel for the state are not open to objection, unless the prosecutor misstates the law, or the facts, in his address to the jury, or takes some undue advantage of the accused, his conduct will not be reviewed by this court. *State v. Hopper,* 71 Mo. 433; *State v. Stark,* 72 Mo. 37; *State v. Hoffman,* 78 Mo. 256. (3) Defendant was not prejudiced by the action of the court in overruling his motion

for continuance. His witnesses were brought in by attachment and were present when their testimony was wanted. *State v. Ward,* 74 Mo. 253, and cases cited ; *State v. Fox,* 79 Mo. 109. (4) There was no evidence to support an instruction for murder in the second degree, and it should not have been given. *State v. Hopper,* 71 Mo. 425 ; *State v. Talbot,* 73 Mo. 347. (5) Defendant's objection to the constitution of the trial jury came too late after verdict. *State v. Jones,* 61 Mo. 232 ; *State v. Ward,* 74 Mo. 256, and cases cited. Statutes in respect to the impanneling of jurors, in criminal cases, are directory. *State v. Knight,* 61 Mo, 373 ; *State v. Ward, supra.* (6) To hold that. such separations of the jury, as occurred in this case, warrant a reversal of the judgment, would render the trial of capital cases in this state practically impossible. *State v. Bell,* 70 Mo. 633, and cases cited. (7) The jurors mentioned in defendant's twentieth objection were not disqualified. Sec. 1897, R. S., 1879 ; *State v. Walton,* 74 Mo. 270 ; *State v. Burgess,* 78 Mo. 234.

NORTON, J.—The defendant was indicted in the circuit court of Pike county, at its September term, 1883, for murder in the first degree, in killing Owen Utterback. He was put upon his trial at the March term, 1884, of said court, resulting in his conviction of the crime as charged. This judgment, on defendant's appeal to this court, was reversed, and the cause was remanded, and defendant being again put upon his trial, at the March term, 1885, of said court, he was again convicted of murder in the first degree, and the cause is before us, the second time, on defendant's appeal.

It is objected that the record proper does not show that any orders were made by the court between the first and second trials, and that it fails to show that the indictment was signed by the prosecuting attorney.. This objection is not well taken ; the record shows that the indictment was returned into court by the grand jury,

at its September term, 1883, and that it is signed by Edward T. Smith, prosecuting attorney ; it further shows that the court convened on the second day of March, 1885, and that the trial of defendant was commenced on the tenth day of said month, and was adjourned, from day to day, till the twelfth day of said month, when the jury returned their verdict.

It appears, from the record, that the court began its session on the second day of March, 1885, and that this cause was placed on the docket for Tuesday, the tenth of March, to which time the subpœnas for the witnesses were returnable ; that a *venire* for a jury was ordered, returnable on Friday, the sixth of March, at which time the persons summoned were examined, touching their qualifications as jurors, and forty persons were found by the court qualified to serve as jurors, a list of whom was furnished to defendant, on Saturday morning, the seventh ; that on the tenth of March, the day the cause was docketed for trial, the said jurors appeared in court, and the state, as well as defendant, proceeded to make their peremptory challenges, neither the state nor defendant, nor his counsel, expressing any desire to make any further examination of said jurors. It is insisted that the action of the court was erroneous, in procuring a panel of forty qualified jurors, on the sixth of March, when the cause could not be tried till the tenth, inasmuch as the jurors, who might have been qualified on the sixth, might have become disqualified between the sixth and tenth of March. We are of the opinion that this point is not well taken, inasmuch as when said jurors appeared on the tenth, defendant or his counsel, if they had so desired, could have examined them to ascertain the fact whether they, or any of them, had become disqualified by anything done or said between the said two dates.

The course pursued by the circuit judge is not open to the objection made, and the adoption of any other course would lead to confusion in the orderly conduct of

the business in such courts, and be subject to the same objection here made. Suppose that the *venire* in question had been returned on the tenth, the day the cause stood for trial, and the court had then found a panel of forty persons, who were competent to serve as jurors ; the defendant, under the law, would then have been entitled to a list of such jurors, forty-eight hours before the trial, thus necessitating its postponement for two days, and when called, after the expiration of forty-eight hours, the objection that the jurors who had been found qualified two days before might have become disqualified in the *interim*, might be made with as much propriety and reason as it is now made to the action that was taken. When a person stands indicted for murder in the first degree, the legislature has wisely provided that he shall not be put upon his trial until he has been furnished, forty-eight hours before the trial, with a list of forty qualified jurors. Defendant has had the full benefit of this humane provision, such a list having been furnished seventy-two hours before he was called upon to submit himself to a trial.

It is also insisted, that the judgment should be reversed on account of the separation of the jury. It appears from the affidavit of one of the deputy sheriffs, having the jury in charge, that, during the progress of the trial, at the request of the judge, he took one of the jurors into the jury room adjoining the court room to answer a call of nature. It also appears from the affidavit of another deputy, that he took three of the jurors from the grand jury room, where he had them locked up, to the privy back of the jail, and took them back as soon as they came out ; that during their absence the other jurors were locked up in the jury room, which adjoined the court room, and which was also locked up ; that nothing was said to these jurors about the trial. To reverse a judgment for such a separation as this, would be trifling with the administration of the law, and such action is in no

way authorized by the ruling made in this case, when it was first before this court, the record in that case showing that one of the jurors was permitted to go to his home and remain all night, and that other jurors separated themselves from their fellows on two occasions.

No objection was made to the panel of jurors, nor to the manner of its selection, till after verdict, and the objection then made in the motion for new trial, that the jury was not summoned from the body of Pike county, came too late. *State v. Jones*, 61 Mo. 232; *State v. Ward*, 74 Mo. 253.

The instructions given by the court, defining murder in the first degree, and also the instruction embracing the law of self-defence, are the same as when the case was here before, and are such as have received heretofore the sanction of this court, and put the case, under the evidence, fairly to the jury.

It is also insisted, that the court erred in refusing to instruct the jury as to murder in the second degree. The instruction was properly refused, as the facts in evidence show the offence to be either murder in the first degree or nothing. The evidence shows that deceased was killed between twelve and one o'clock, while digging in a pond near his residence in Pike county, by a ball discharged from a gun, which passed through the heart and both lungs of deceased. No one witnessed the homicide except the defendant, Lemasters, a hired hand of deceased, who was in a barn near by, and Mrs. Utterback, who was at the residence, a short distance off, heard the report of the gun and deceased cry out, "Oh! Oh!". Lemasters ran out and found deceased lying about fifteen feet from where he had been at work, and Mrs. Utterback also came out and found her husband dead. About thirty-seven paces from where the body lay, near a hedge and rail fence, the tracks of a man were found. One of the tracks appeared to have been made by a boot with the heel off. The tracks went in a north

and south direction, terminating at the fence. Between the fence and the body, a piece of powder-stained cotton flannel gun-patching was found.

The morning of the twenty-fourth of September, defendant was seen going in the direction of Utterback's with a gun on his shoulder. When the witness who saw him attempted to overtake him, he quickened his pace. The night after the homicide, several parties went to the house of defendant and arrested him. One of his boot heels was off and his gun was found to be loaded with the same kind of patching that had been found near the scene of the homicide. The following Thursday the defendant was taken to Bowling Green, the county seat, by several parties. While on the way he confessed that he had killed Utterback. He said Utterback had spoken disrespectfully of his wife, and had called him trifling (some of the witnesses testified to this, while others say that he, defendant, said nothing about the cause of his killing Utterback), and that his malice towards deceased had grown so that he could not control it, and he killed him. Subsequently, while being taken from Bowling Green to Louisiana, defendant made a similar confession to the marshal of Bowling Green and the carriage driver.

It was testified to by a witness, who heard defendant's confession, that he said: "My malice grew upon me so I could not control it, and I killed Utterback. I was up near his house on Sunday, and intended to kill him, but changed my mind. I came up Monday through the cornfield, heard Utterback called to dinner, and waited by the fence near where I knew he would go to work when he came out from dinner. When he came out and commenced digging in the pond, I spoke to him, saying: 'Good evening, Mr. Utterback,' and as he looked up, I shot him."

Defendant did not state in any of the confessions

made by him, that Utterback had ever made threats against him.

On the part of the defence, the evidence of several witnesses showed that deceased had spoken some time before disrespectfully of defendant's wife; that deceased and defendant, some time previous, had a difficulty, and that deceased had said that if the law would not reach defendant, bullets would. Defendant, who testified in his own behalf, stated that he was not lying in wait to kill deceased; that when he shot Utterback he thought deceased was about to pull a pistol on him; that he saw no pistol, but thought from Utterback's motions he was about to draw one. Several witnesses, who assisted in taking off Utterback's clothes and preparing his body for burial, testified that he had no pistol on his person, and that the only things found in his pocket or on his person, were a pocket knife, a purse and a handkerchief.

The direct question, when this cause was first here, viz.: whether, under the facts which the evidence tended to establish, it was proper to give an instruction for murder in the second degree, was before the court, and it was held that they would not warrant such an instruction.

We have carefully examined the whole record, and find nothing in it which would justify an interference with the judgment, and from it have been impressed with the conviction that the homicide was committed under circumstances amounting to assassination by lying in wait, and that the verdict by the jury was fully warranted by the evidence.

Judgment affirmed, in which all concur, except Henry, C. J., absent.