STATE v. EVERETT C. LYLE, Appellant.—No. 39020.—182 S. W. (2d) 530.

Division Two, October 9, 1944.

*Thomas S. Denny, Clark, Boggs, Peterson & Becker* and *William L. Nelson, Jr.,* for appellant.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

TIPTON, J.—An information was filed in the circuit court of Howard County, Missouri, in which the appellant was charged with first degree murder for the shooting and killing of his wife. The

venue in the cause was changed to the circuit court of Boone County, Missouri, and the trial resulted in convicting the appellant of first degree murder.

The appellant's first assignment of error is that the evidence is insufficient to support a judgment of first degree murder because there is a total failure of proof of deliberation and premeditation. This will require a review of the evidence, which showed the following facts.

We adopt the following statement of facts from the respondent's brief which accurately follows the testimony:

"The evidence shows that the appellant killed his wife at their farm home in Howard County on July 19, 1943, after he had returned from Boonville, Franklin and Fayette, with one John Palmer, Constable of Moniteau Township of that county. According to John Palmer's testimony he and the appellant had been drinking beer at various places and returned to appellant's home with some salt, window panes, and other things, which had been purchased that day. As soon as the two arrived at appellant's home a fuss started between the appellant and his wife and he accused her of infidelity, which she denied, and he called her a liar, and, apparently, threatened to strike her, and was admonished by Palmer, after which the appellant went into the house and the deceased followed him, however not into the house.

"Witness Palmer heard the gun shot and ran around, and appellant's wife was laying at the foot of the steps and appellant was close to her with the gun. He stated that appellant waved the gun at him and told him 'Get back, get back.' Witness Palmer went to a neighbor, Mr. Frink, and upon their return the appellant said: 'I have done just what I intended to do.'

"L. C. Robinson testified that he lived close to defendant Lyle and that on the evening of July 19, 1943, defendant came to his house and he said to defendant, 'How do you feel, Mr. Lyle?' and defendant said, 'I don't feel so good, see? I shot my wife.' Witness stated that he replied, 'Oh, pshaw,—did you kill her?' and that defendant said: 'I cut her pretty deep' and witness said, 'Did you hurt her very bad?' and he repeated, 'I cut her pretty deep.' And that appellant said: 'I want you to go over there in the morning and turn the calf out to the cow,' and turned around and walked off.

"R. L. Farmer, Sheriff of Howard County testified that he was called on the night of July 19, 1943, and went to the home of defendant Lyle, and found the body of Mrs. Lyle laying on the bed and that he was ▉ shown where the gun was, and stated that they found an empty shell in the corner of the room near the front door. Witness stated that he heard the appellant say to Mr. Ashcraft: 'Kerman, I have done an awful thing,—I have shot my wife.' That the appellant was talking rather loud and was excited and that he got

up and looked at his wife lying on the bed, and said he didn't mind seeing her lying that way at all, but seeing anybody else like that would have bothered him, but seeing her there, dead, didn't bother him at all, and he showed us where he shot her, or where she fell. Witness stated that he pointed to a flower mound northeast from the door and said he was standing there, and that there was a little puddle of blood right near the front door steps where she fell and bled. Witness testified that it was about 20 feet from the flower bed to the puddle of blood. He also testified that he talked at a later time with the appellant in the jail and told him that he was charged with first degree murder and informed him that the charge was determined to some extent by the remarks he made after he shot her, and that appellant said, 'Oh, yes, I did tell the patrolman last night that I would have shot her two years ago if I had caught her, but she run down the hill and I could not catch her.' Witness stated that he examined the wound on the body of the deceased, Carrie Lyle and the wound was just below the right shoulder blade, in the back; that the hole was about an inch and a half or two inches in diameter in the back, and there were a few scattering shot off to the side; that some shot that hit over on the other shoulder indicated that he wasn't standing squarely behind her but off sideways and that the pattern of the shot in the back was about eight inches.

"A shot gun was introduced in evidence, with which the defendant stated he killed the deceased according to the testimony of Sheriff Farmer. (There was no testimony that there were powder burns on the deceased's body.) Witness stated that he smelled alcohol on the breath of appellant that evening and that the appellant said 'You guys think I am crazy, but I am not. I know what I am doing.'

"K. W. Ashcraft testified that he had been Sheriff of Howard County the preceding term and was at the time Deputy Sheriff of that county; that he went to the home of appellant Lyle that evening and Lyle told him that he had shot his wife and that she was dead; that he observed a puddle of blood out by the steps where Lyle said he had shot his wife. Witness testified as to the wound in the deceased's back, stating that the appellant said that he and his wife had gotten into a fuss and he had got hold of the shotgun some way and he didn't know how he did it, and he said he just shot her, and that he said that after he shot her he picked her up and helped her in and put her on the bed and that later he got the baby out of the crib and took it and laid it on the bed beside of her. Witness stated that appellant at the time said that it hurt him to look at a dead person, but it didn't hurt him at all to look at her there, that he would have killed her about two years ago if she had not run and got away from him—down a hill. Witness testified that appellant said, 'Maybe you fellows think I am drunk or crazy, but I know as well what I am doing as you do,' and that appellant talked quite a bit; that after

appellant's mother got there that he heard the appellant say that he had killed her and that he should be sorry, but he wasn't."

Other witnesses testified to a similar state of facts. The appellant's testimony tended to show that the killing was the result of an accident. Other essential facts will be related in the course of this opinion.

The appellant contends that before his conviction can stand, "there must be some extraneous evidence—something more than extrajudicial statements and admissions of appellant—something from which the jury could reasonably find that deceased was wilfully, deliberately, and premeditatedly killed." Or, to state his point another way, appellant contends that there must be independent proof of the corpus delicti of every element of first degree murder before his statements or confessions can be considered in determining whether he is guilty of first degree murder.

The rule is well established in this State that the uncorroborated confession of the accused alone is not sufficient to support a conviction in a criminal case; and in additon to the accused's confession, there must be independent proof that the alleged crime was committed. There must be proof of the corpus delicti, independent of the confession.

"The corpus delicti in murder consists of two elements, to-wit, the death of the person alleged to have been murdered, and the criminal agency of some one causing said death. Both of these must be established in a prosecution for murder or the conviction can not stand." State v. Henderson, 186 Mo. 473, 85 S. W. 576; State v. Barrington, 198 Mo. 23, 95 S. W. 235.

In the case at bar, there was independent proof without the statements of the appellant that deceased was shot in the back with a shotgun, and the gun was in the appellant's hands immediately after the shooting.

This is sufficient to prove that the deceased was killed by the criminal agency of the appellant. We have repeatedly held that full proof of the corpus delicti independent of appellant's extrajudicial confession was not required. State v. Skibiski, 245 Mo. 459, 150 S. W. 1038; State v. McGuire, 327 Mo. 1176, 39 S. W. (2d) 523; State v. Kauffman, 329 Mo. 813, 46 S. W. (2d) 843; State v. Meadows, 330 Mo. 1020, 51 S. W. (2d) 1033; State v. King, 342 Mo. 1067, 119 S. W. (2d) 322, l. c. 327.

In the King case, supra, the appellant was convicted of first degree murder. We said, "There was independent proof that appellant called for Speer's cab that night; that Speer was found fatally wounded on a public street about midnight; that appellant's pistol inflicted the wound; that the wound was not self-inflicted (for the pistol was found at a distant place); and that appellant fled (for Speer was found alone). This was enough to establish the corpus

delicti, viz., that Speer's death was caused by a criminal agency other than his own.''

We think that under the facts and circumstances related above, the corpus delicti was established independent of the appellant's admissions. These facts and circumstances correspond with the appellant's extrajudicial statements or confessions. We hold that after the independent proof that deceased met her death .by the criminal agency of some one other than herself, the jury had a right to take this independent proof, coupled with appellant's statements, to determine if appellant was guilty of first degree murder. State v. Henderson, supra.

Appellant next contends that even if the statements of appellant could be considered in determining the existence of premeditation and cold blood, they are insufficient to establish this essential element of murder in the first degree.

We agree with appellant that ''Where a homicide is intentionally committed with a deadly weapon used upon a vital part of the body and there is no witness to the occurrence, murder in the second degree is presumed in the absence of evidence tending to show a different grade of offense or that such killing was justifiable or excusable.'' State v. McCracken, 341 Mo. 697, 108 S. W. (2d) 372; State v. Eaton, 154 S. W. (2d) 767. However, murder in the first degree may be shown by circumstantial evidence. State v. Cade, 326 Mo. 1132, 34 S. W. (2d) 82.

When we consider he stated that he was standing about twenty feet from where the deceased fell; that there were no powder burns on deceased's body; that he had threatened to do her bodily harm in the presence of Witness Palmer; also, the statement that he would have killed her.two years ago if she had not run away from him; that ''I have done just what I intended to do;'' the fact that she was shot almost in the back at a place where the inference could be drawn that she was trying to escape from him, together with the statements that it would hurt him to look at a dead person, but it did not hurt him to look at her there; and also, that ''. . . I know as well what I am doing as you do,'' are sufficient circumstances from which the jury could find that appellant killed deceased in cold blood. In other words, we think there is substantial evidence to show the killing was done with deliberation and premeditation.

Appellant's testimony to the effect that it was accidental was a question for the jury. They did not believe him; this they had a right to do.

As we have already held that there was substantial evidence showing that the appellant was guilty of murder in the first degree, it follows that his demurrers to the evidence were properly overruled.

The appellant's last assignment of error is that the court erroneously gave an instruction on good character. The appellant was

a witness in his own behalf. It was then proved that he had been convicted of stealing chickens in the nighttime, that he was convicted of the possession of liquor, and that he was convicted of careless and reckless driving. It is true these convictions were offered only for the purpose of affecting his credulity as a witness.

However, on cross-examination of K. W. Ashcraft, the appellant asked this witness the following question: "Q. Since you have been Sheriff and Deputy Sheriff, his record for peace and quietude has been good? A. As far as I know, it has."

On cross-examination, similar questions were asked Witnesses Palmer and Brewster.

By asking these questions, the appellant certainly put in issue his character for peace and quietude. Under Section 4070, R. S. Mo. 1939, we think it was the duty of the trial court to instruct on good character after the above evidence was admitted. No doubt, if the trial court had failed to give such an instruction, the appellant would now be contending such failure was error.

Finding no reversible error in the record, the judgment is affirmed. All concur.