STATE of Missouri, Respondent,

v.

Douglas Wayne THOMPSON, Appellant.

No. 49324.

Supreme Court of Missouri,

En Banc.

Jan. 14, 1963.

Byron Kearby, Poplar Bluff, for appellant.

Thomas F. Eagleton, Atty. Gen., George W. Draper, II, Asst. Atty. Gen., Jefferson City, for respondent.

STORCKMAN, Judge.

The defendant, Douglas Wayne Thompson, was tried in the Circuit Court of Bollinger County on change of venue from Cape Girardeau County and was convicted by a jury of murder in the first degree. The court found that the defendant had been convicted of a prior felony and fixed his punishment at death. The defendant's motion for new trial was overruled and he has appealed. The victim of the homicide was Herbert L. Goss, a police officer of the City of Cape Girardeau, Missouri.

In the trial court the defendant was represented by counsel who has also briefed the case in this court. In general the questions presented for review are that the evidence was insufficient to justify submitting the charge of murder in the first degree to the jury; that the jurors were permitted to separate during the trial; and that the state was permitted to cross-examine the defendant on matters not brought out by his examination in chief.

On March 10, 1961, at about 9:15 p.m., automobiles No. 2 and No. 4 of the Cape

Girardeau Police Department were dispatched to the Town Plaza Shopping Center in Cape Girardeau. From there they started in pursuit of a two-door 1955 Oldsmobile hardtop automobile north on U. S. Highway 61. During the pursuit the red flasher lights of the police cars were on and their sirens were sounded. When overtaken the Oldsmobile pulled off of the pavement and stopped on the east shoulder of Highway 61 facing north at or near the entrance of a drive-in refreshment stand. Police car No. 2 stopped on the shoulder about six feet behind the Oldsmobile. Car No. 4 was driven beyond, turned around, and stopped on the west shoulder of the highway headed south, practically opposite the Oldsmobile. The concrete highway was about twenty feet wide at this point.

Police Officers Donald Crittendon, Herbert L. Goss, and Hugo Lang, Jr., were the occupants of car No. 2 driven by Officer Crittendon. Police Officers Shannon Kelley and Robert F. Ross were in car No. 4 driven by Officer Kelley and parked on the west side of the highway. Officers Kelley and Ross remained in car No. 4 while the other three officers alighted from car No. 2 and approached the parked Oldsmobile from the rear. Officer Crittendon walked to the left door of the Oldsmobile and talked to the driver. Officer Goss went to the right side of the Oldsmobile and Officer Lang to the left and then to the rear of the Oldsmobile. The police officers were dressed in regular police uniforms. A flashlight in the hands of one of the policemen revealed in addition to the driver another man slumped down on the front seat as though he was asleep or resting. It was later established that the driver was Sammy Aire Tucker and the passenger was Douglas Wayne Thompson, the defendant in this case. Officer Crittendon asked Tucker the driver for identification and was shown a slip of paper. Crittendon examined the paper, handed it back to Tucker, and asked the men to step out of the car. As Tucker stepped out, he shot Crittendon who, although mortally wounded, was able to draw

his gun and fire at Tucker. Immediately after Crittendon was shot Tucker turned and started firing at Officers Kelley and Ross across the road; they returned the fire. There was evidence that at the same time Tucker shot Crittendon the defendant Thompson, on the right side of the Oldsmobile, also fired his automatic pistol. Officer Goss was shot during the gunfire and died later that night due to hemorrhaging caused by a gunshot wound which severed the arteries in both of his legs. Tucker was wounded but he and Thompson succeeded in getting back into their car and they drove from the scene north on Highway 61.

At about 10 p.m. on the same night, Bill Shambo was parked on a gravel road east of Jackson about seven miles from Cape Girardeau with his brother and cousin when an Oldsmobile drove up. The defendant got out of the Oldsmobile, approached Shambo's automobile, pointed a gun at the passengers, and told them to get out or he would kill them. The defendant got into the driver's seat of the Shambo car and Tucker, who was bleeding about the face and carrying a rifle, got out of the Oldsmobile and into the other automobile which was then driven away in the direction of Jackson. At about 11:30 the same night, defendant Thompson with a gun in hand went to the front door of the home of George Gray of Glen Allen in Bollinger County, asked Gray for the keys to his car and struck Gray on the left temple with his pistol. Tucker then entered the house with a rifle and threatened to blow Gray's wife Lena to pieces. Gray's son then gave the defendant the keys to his Ford automobile which Thompson and Tucker took and drove away in a northern direction. Seven days later on March 17, 1961, a member of the Missouri Highway Patrol arrested the defendant Thompson at a home about three miles north of Poplar Bluff. The defendant was taken to troop headquarters where he signed a statement which was introduced in evidence. The defendant's Browning automatic pistol ejected

spent shells. The police officers were using revolver-type guns. A search was made at the scene of the shooting for bullets and spent shells, but none were found. The defendant and Tucker also had a 30-30 rifle which the defendant denied he had fired as their car was driven away. When the Oldsmobile was found, there was a bullet hole in the rear end extruding outward at an angle which indicated the shot had been fired by a person in the passenger's seat. The defendant testified in substance that he did not fire a shot at the time in question and that he did not have any knowledge or indication that Tucker was going to shoot at the police officers. He admitted prior convictions in the State of California for the offenses of burglary and first-degree armed robbery.

Sammy Aire Tucker was tried and convicted of the murder of Officer Crittendon and his judgment of conviction was affirmed by this court. See State v. Tucker, Mo., 362 S.W.2d 509. The defendant Thompson was charged with first-degree murder by reason of the death of Officer Goss and his conviction is the subject of this appellate review.

■ The defendant's first two points are essentially the same in that they involve the sufficiency of the evidence to sustain the conviction of first-degree murder and they will be treated together. In testing the sufficiency of the evidence in a criminal prosecution, the facts in evidence must be considered in the light most favorable to the state, and the evidence favorable to the state and favorable inferences reasonably to be drawn therefrom must be deemed to be true, and all evidence and inferences to the contrary must be disregarded. State v. Strong, Mo., 339 S.W.2d 759, 764 [3].

Murder in the first degree is defined by § 559.010 RSMo 1959, V.A.M.S., as follows: "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homi-

cide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree." Thus, if the defendant fired the shot that caused the death of Officer Goss, and if such killing was "willful, deliberate and premeditated", then the defendant was properly convicted of first-degree murder. There is no doubt that Officer Goss was fatally wounded at the scene of the altercation between the Cape Girardeau policemen and the defendant and his companion Tucker.

■ The essential elements of murder in the first degree including willfulness, deliberateness and premeditation may be established by circumstantial evidence. State v. Lyle, 353 Mo. 386, 182 S.W.2d 530, 533 [7]; State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 805 [6]; State v. McCracken, 341 Mo. 697, 108 S.W.2d 372, 374 [5]; State v. Cade, 326 Mo. 1132, 34 S.W.2d 82, 83 [2, 3]. If the defendant fired the shot that struck Officer Goss, the circumstances shown by the evidence were sufficient to support a finding that the homicide was a willful, deliberate and premeditated killing.

■ The defendant's chief contention is that he did not fire the shot that killed Officer Goss. He testified that he got out of the Oldsmobile with his hands in the air and his Browning automatic pistol in his waistband; that he did not fire a shot during the gun battle and did not attempt to and in fact did not fire the gun in Cape Girardeau County; that he had no knowledge that Tucker was going to shoot at the police officers; and that after the shooting started he dropped his hands, ran to the Oldsmobile and got in as Tucker was driving away.

The evidence shows without dispute that the defendant and Tucker had escaped from jail in California and had committed a series of armed robberies as they fled eastward across the United States to Missouri; that the defendant was on the right side of

the Oldsmobile within a few feet of Mr. Goss at the time the officer was shot; that he had on his person a loaded automatic pistol; that he fled from the scene of the shooting and for seven days thereafter eluded capture by resort to acts of violence and thefts of automobiles. The presence of the defendant at the time and place the crime was committed, a motive for resisting arrest, his possession of a gun which was the means of committing the offense and his opportunity to use it, and his flight from the scene of the shooting, are all circumstances tending to show guilt. 23 C.J.S. Criminal Law § 907a, p. 556 and p. 558; State v. Johnson, 362 Mo. 833, 245 S.W.2d 43, 46 [2]; State v. Taylor, 118 Mo. 153, 24 S.W. 449, 451 [5].

There was further evidence that shots were fired on the passenger's side of the Oldsmobile "at the same time" that Tucker shot Officer Crittendon; that the defendant and Officer Goss were the only persons on the passenger's side at the time in question; and that after Officer Goss fell his revolver was still in its holster and had not been fired. Officer Ross testified that the man on the passenger's side, later identified as the defendant, pulled a gun from his waistband and raised his arm; that he, the witness, heard the sound and saw the flash of two shots which came from the direction of the defendant; and that Officer Goss, the victim of the shooting, who was facing west at the time with his right side toward the defendant, immediately after the shots were fired hollered, "I'm shot, I'm shot". Somewhat similar testimony was given by Donald Wissman, a carhop working at the drive-in, and by Officers Lang and Kelley. The fatal bullet entered the right side of Officer Goss's body above his knees and ranged slightly downward severing the arteries in both legs. Under the state's evidence, the defendant was the only person in a position to fire the shot which struck Officer Goss. The evidence is clearly sufficient to sustain the defendant's conviction of first-degree murder. State v. Goodwin, Mo., 352 S.W.2d 614, 620 [5]; State v. Small,

Mo., 344 S.W.2d 49, 51 [2]; State v. Lyle, 353 Mo. 386, 182 S.W.2d 530, 533 [5]; State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 804–805 [4]; State v. Page, Mo., 130 S.W. 2d 520, 523 [5]; State v. Tucker, Mo., 362 S.W.2d 509.

Next the defendant contends that the trial court erred in failing to grant the defendant a new trial because the jury was permitted to separate during a recess of the court. Section 546.230 RSMo 1959, V. A.M.S., provides that, with the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court in the trial of all cases of felony except capital cases. Since this is a capital case, it falls within the prohibition of the statute. Sections 546.240 and 547.020(2) relate specifically to separation after the jury has retired for deliberation.

At the hearing of the motion for new trial, evidence was taken on this specification of error. The defendant testified that he had seen one of the jurors leave the jury box and talk to Frank Sheible, a highway patrolman, and that he had seen another juror leave the courtroom with the sheriff during a recess. For the state Mr. Sheible testified that one of the jurors who had been disqualified and released from the panel came over and talked to him during a recess for about a minute; his acquaintance had asked him if he had been hunting and he answered that he went whenever he had a chance; there was no reference to the trial in any way; and he did not have any conversation with any of the qualified jurors.

The sheriff, Frank Matthews, testified that at a recess during the trial Mr. Long, one of the jurors, requested that he be permitted to go to the restroom; he, the sheriff, told the trial judge of the request and was told to take the juror to the restroom; he thereupon took the juror from the courtroom and to the basement where the only toilet in the building was located; he was

never further than three feet away from the juror but did not talk to the juror during the trip to and from the restroom; and the juror did not talk to anyone and no one talked to him during the trip. At the conclusion of the testimony, the court found that the jurors had not been subjected to any improper influence during the trial and that the defendant had not been prejudiced by the events. Thereupon the defendant's motion for new trial was overruled.

We find as the trial court evidently did that the person who spoke to the highway patrolman was not a member of the jury chosen to try the case but had been released from the panel and that there was no impropriety in his brief exchange with the patrolman. The defendant was not prejudiced and is not entitled to any relief on that score. This leaves for consideration the incident of the sheriff taking juror Long to the toilet during a recess of the court.

■ It has been uniformly held that the necessary separation of a juror from his fellow members to attend a call of nature, with the court's permission and under the supervision of an officer of the court, is not a separation of the jury within the meaning of the statute. State v. Dyer, 139 Mo. 199, 212, 40 S.W. 768; State v. Murray, 91 Mo. 95, 103, 3 S.W. 397; State v. Gregory, 158 Mo. 139, 147–148, 59 S.W. 89; State v. Prince, 258 Mo. 315, 328, 167 S.W. 535; State v. Spaugh, 200 Mo. 571, 608, 98 S.W. 55; State v. Collins, 86 Mo. 245, 249; State v. Ferguson, Mo., 133 S.W.2d 1023, 1025 [3–5]. See also State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 123 [12]. To hold otherwise would be to place a most unreasonable and impracticable construction on §§ 546.230, 546.240 and 547.020. The occurrence with which we are concerned falls clearly within an inevitable exception to the statutory mandate.

■ ■ Nevertheless, the holding of the trial court seems to give effect to the rule that where, as here, the separation occurs before the submission of the cause to the jury, the burden is on the state to show affirmatively that the jurors were not subjected to improper influences during the period of separation. State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 122 [11]; State v. Emrich, Mo., 252 S.W.2d 310, 315 [4, 5]; State v. Tarwater, 293 Mo. 273, 239 S.W. 480, 485 [13]. The trial court properly found that juror Long was at all times under the immediate and close supervision of an officer of the court and that Long was not subjected to improper influences at any time. The claim of error is denied.

■ ■ The defendant's final contention is that the court erred in permitting the prosecuting attorney to cross-examine the defendant on matters not brought out by his examination in chief. Section 546.260 RSMo 1959, V.A.M.S., expressly provides that a defendant who elects to testify in his own defense " * * * shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; * * *."

The fact that the appellate brief does not specify the respects in which the cross-examination was erroneous would be sufficient reason to deny the assignment, but in view of the nature of the offense and the penalty assessed we have made our own search to ascertain if the defendant's rights were violated. On direct examination the defendant in answer to questions propounded by his counsel testified that he did not fire a shot on March 10 during the gun battle in which Officer Goss was shot and that he did not have any knowledge or indication from Tucker that he was going to fire a shot at the time the police officers were shot. On cross-examination the court overruled objections to questions propounded to the defendant with regard to statements alleged to have been made to Sgt. John N. Crow of the Missouri State Highway Patrol that the defendant had told him that he had tried to shoot his automatic pistol but that it had jammed; that the only gun that he had purchased any shells for

was the 30-30 rifle; and that there was no particular reason for his carrying his automatic pistol except that he had to put it somewhere and he did not want to leave it in the car.

In support of his contention, the defendant relies upon State v. Nicholson, 337 Mo. 998, 87 S.W.2d 425, and State v. Pfeifer, 267 Mo. 23, 183 S.W. 337. In each case the judgment was reversed and the cause remanded on the ground that the cross-examination was broader than permitted by the statute. The Nicholson case, 87 S.W.2d loc.cit. 426, relies upon Pfeifer, but both of these cases have been distinguished and repudiated in the later decisions of State v. Scown, Mo., 312 S.W.2d 782, 788, and State v. Beishir, Mo., 332 S.W.2d 898, 901–902, to which we refer for the rationale.

Under the prevailing standards where a defendant in a criminal case testifies in his own behalf and the questions propounded on direct examination involve practically the whole issue tendered by the information or indictment, the cross-examination is not limited to a mere categorical review of the matters referred to on direct examination, but the subject matter referred to in a general way may be developed in detail on cross-examination. Section 546.-260 RSMo 1959, V.A.M.S.; State v. Kaufman, Mo., 254 S.W.2d 640, 641 [1–3]; State v. Scown, Mo., 312 S.W.2d 782, 787 [3]; State v. Beishir, Mo., 332 S.W.2d 898, 902 [2]; State v. Christian, Mo., 245 S.W.2d 895, 899 [5].

The defendant's denial that he fired a shot during the time in question amounted to a general and complete denial of the offense charged in the information. If the defendant did not fire the shot that struck Officer Goss, then he could not be guilty of the offense with which he was charged. The questions propounded by the state on cross-examination did not violate the protection afforded by § 546.260, and the trial court did not err in overruling the defendant's objections thereto.

All of the questions presented by the defendant have been examined and found to be without merit. The defendant was tried fairly and without prejudicial error. Accordingly the judgment is affirmed.

All concur.