State v. Gordon.

---

THE STATE v. SIDNEY GORDON, Appellant.

Division Two, December 9, 1913.

1. **LARCENY: Evidence: Showing Defendant's Presence.** Where in a prosecution for grand larceny the evidence tended to show that defendant boarded a street car, pulling and pushing a great deal, and meanwhile took a passenger's pocketbook from his hip pocket, there was no error in admitting testimony that a few minutes before that time, and near the same place, defendant had pushed in between the witness and his father on the platform of another car. The evidence was properly admitted for the purpose of showing defendant's presence at or near the scene of the crime a short time prior to its commission, and it is not sufficient objection to say that it might prove the commission or attempted commission of another crime.

2. ———: **Argument: Remarks of Prosecutor: Within the Record.** Although such conduct is not to be commended, it was not error for the prosecutor, where the evidence tended to show that defendant was guilty of larceny and was not a resident of that city, to call defendant in his argument "a foreign thief."

3. ———: ———: ———: **Defendant's Failure to Testify.** Where a witness for the State in a prosecution for grand larceny was not present, but his testimony at a previous trial was introduced by consent, it was not error for the prosecutor to say in his argument: "[The witness] was not able to be here and we had to introduce his testimony and that testimony is conclusive and not contradicted by any evidence." The remark had no reference to defendant's failure to testify in his own behalf.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*W. Blodgett Priest* for appellant; *Matt. Holland, Chauncey H. Clarke* and *Otto Karbe* of counsel.

(1) The court committed reversible error in allowing William O. Schmidt, a witness for the State, to testify over defendant's objection as to what occurred between defendant and Schmidt's father before the offense in issue occurred, therein indicating and insinuating that defendant had committed, or attempted to commit a crime on the witness's father, as well as the offense in issue. State v. Speyer, 207 Mo. 543. (2) The prosecuting attorney was guilty of making unlawful remarks in his closing argument to the jury, which he was allowed to do by the court, over defendant's objection. These remarks were abusive, constituted an appeal to passion and prejudice, and imputed other and prior acts of thievery to the defendant, which were *dehors* the record, thereby constituting reversible error. State v. Fischer, 124 Mo. 464; State v. Lee, 66 Mo. 168; State v. Jones, 249 Mo. 80; State v. Phillips, 233 Mo. 306; Ferguson v. State, 44 Ind. 33.

*John T. Barker*, Attorney-General, and *S. P. Howell* for the State.

(1) Evidence was admitted showing that defendant had pushed and jostled other persons, but the jury was specifically instructed to disregard such testimony except for the purpose of showing defendant's presence in the neighborhood at the time the larceny is alleged to have been committed. Furthermore, evidence tending to show the commission of other offenses is admissible where the identity of the defendant is

one of the controverted questions before the jury. State v. Hubbard, 201 Mo. 641; State v. Spaugh, 200 Mo. 594; State v. Toohey, 203 Mo. 674; State v. Collins, 181 Mo. 260; State v. Jones, 171 Mo. 407; State v. Bates, 182 Mo. 70; State v. Bell, 212 Mo. 124; State v. Newman, 245 Mo. 498. (2) Remarks of Prosecutor. (a) The court did not err in failing to sufficiently rebuke the circuit attorney for stating in argument to the jury that: "Mr. Bischoff was not able to be here and we had to introduce his testimony, and that testimony is conclusive and not contradicted by any evidence." This remark, read in the light of the testimony given by the witness Bischoff was merely an expression as to the strength of the State's evidence. The circuit attorney was giving to the jury the resultant of all the evidence that had been submitted during the trial, and his statement is substantiated by the testimony adduced, namely, that the fact of the commission of the larceny, as testified to by Bischoff, was uncontradicted. It cannot be reasonably inferred that the remark was intended as a reference to the failure of defendant to testify in the case. This court has frequently held it permissible for prosecuting attorneys in argument to give a summary of the evidence to the jury, indicating the points disputed and those remaining uncontradicted, so long as such argument cannot, by reasonable inference be interpreted as a direct reference to defendant's failure to take the stand in his own defense. State v. Ruck, 194 Mo. 440; State v. Fields, 234 Mo. 625; State v. Preston, 77 Mo. 296; State v. Miles, 199 Mo. 551; State v. Faught, 140 Mo. App. 373; State v. Donaldson, 243 Mo. 478. (b) Evidence had been adduced to establish the larceny as charged, and that the defendant had but recently arrived in St. Louis from Chicago. Where evidence introduced forms the basis of and warrants the comment of counsel, it is not reversible error. State v. Dyer, 139 Mo. 199; State v. Griffen, 87 Mo. 615; State

v. Cummings, 189 Mo. 644; State v. Gartrell, 171 Mo.
511; State v. Rasco, 239 Mo. 579; State v. Jones, 249
Mo. 98; State v. Allen, 174 Mo. 698; State v. Ferrell,
246 Mo. 336; State v. Hilton, 248 Mo. 534.

WILLIAMS, C.—Defendant was charged with the
crime of grand larceny, by stealing from the person,
as defined by section 4538, Revised Statutes
1909, amended by Laws of Missouri 1911, at
page 193. Upon a trial had in the circuit court
of the city of St. Louis, defendant was found guilty
and his punishment assessed at three and one-half
years in the penitentiary. The State's evidence tends
to show the following facts: The alleged crime occur-
red on October 7, 1912, near the corner of Eighteenth
and Market streets, in the city of St. Louis. One
Charles H. Robnett came into the Union Depot on an
early morning train, and, just before getting off the
train, examined his pocketbook and counted his money,
which amounted to sixty-three dollars. He then placed
his pocketbook, which he says was a black one, cross-
wise in his left hip pocket and came through the Union
Depot and up to the corner of the above named streets
for the purpose of taking a north-bound Eighteenth
street car to his home. While waiting for the car, he
felt the pocketbook in his pocket and noticed the time
from the depot clock to be 7:35 a. m. In a minute or
two he got upon an Eighteenth street car going north.
He boarded the car on the east side of Eighteenth
street and just south of Market street and at a point
very near a fruit stand conducted by one Bischoff.
Just as Robnett attempted to board the car, one Robert
Webster "swung in ahead" of him and boarded the
car; Robnett followed and just back of Robnett came
the defendant Gordon. Robnett noticed some push-
ing and jostling on the back platform and felt the de-
fendant pushing against him, apparently trying to

get upon the back platform which was crowded. When the car reached Eighteenth and Olive street, defendant and said Webster got off of said car, without paying their fare, and they, in company with a third person named Albers, turned east on Olive street. After the car passed Olive street, Mr. Robnett entered the car and took a seat—riding to a point near his house. When Robnett reached his home it was discovered that his left hip pocket was turned wrong side out and his pocketbook and money gone. He reported this fact to the police department, giving them descriptions of the persons on the platform of the car and about two p. m. of that day defendant and Webster and two others were arrested. Defendant was identified by Robnett as being the man who got on the car behind him and pushed against him. Louis Schmidt and son William testified that they saw the defendant and a man by the name of Webster board a Market street car, going east, at the corner of Market and Eighteenth streets, about 7:30 on the same morning, and that defendant crowded his way in between the father and son and then left the car before it had crossed Eighteenth street, and that Webster rode to Seventeenth street before leaving the car. These two witnesses testified that their attention was called to defendant by reason of his shoving and pushing. Jacob C. Bischoff testified that he was in charge of the fruit stand at 18 South Eighteenth street, within a few feet of where prosecuting witness boarded the northbound Eighteenth street car, and that about fifteen minutes after seven o'clock that morning he noticed defendant standing in front of his fruit stand; and witness asked defendant to stand out of the way so that people could see his fruit; that he noticed defendant get on a street car and after riding a short distance get off and come back to the corner and get on a second time and repeat the same action; that his attention was attracted to defendant; that about 7:30 a. m. he noticed defendant get on a north-

bound Eighteenth street car and saw him stand on the
first step, holding on to the handrail with his right hand
and taking a black pocketbook from the left hip pocket
of the man in front of him with his left hand; and that
defendant remained on the car, as the car passed up
the street, and out of witness's sight. Witness
did not know the man whose pocketbook was stolen and
said that he was not able to identify him. The wit-
ness said that the man whose pocketbook was stolen
was wearing black clothes and the man who took the
pocketbook was wearing brown clothes. About noon
on the same day the witness told two police officers that
he had seen the pocket picked and described the man.
Detective McKenna testified that he arrested defend-
ant, on the day of the theft, at the Princess Hotel, which
was about one hundred and fifty feet from the corner
of Eighteenth and Market streets in the city of St.
Louis. When arrested, defendant said that he and
Webster had been in St. Louis three or four days and
had come to St. Louis from Chicago. The evidence on
the part of the defendant was to the following effect:
The street car conductor, in charge of the north-bound
Eighteenth street car, upon which prosecuting witness
rode to his home, testified that he saw prosecuting
witness on the car that morning but did not notice de-
fendant on the car. The conductor was not acquainted
with defendant. A bell boy at the Princess Hotel testi-
fied that defendant and another man came to the hotel,
about two o'clock a. m., on October 7, 1912, and left
a call for nine o'clock that morning; that about 9:30
a. m. he took some coffee to defendant in his room,
and that he did not see the defendant between two a.
m. and 9:30 a. m. that morning. The night clerk at the
Princess Hotel testified that he was on duty from mid-
night until noon on that day; that defendant came in
and went to bed about two a. m. on that day, and that
he did not see him again until about 10:30 a. m. on the
same day, at which time defendant returned the key

to the desk and that it was the day before the Veiled Prophet's parade and that a great many people were stopping at the hotel.

## OPINION.

I.   It is urged that error was committed in permitting witness William O. Schmidt, over defendant's objection and exception, to testify that
Evidence: Showing Defendant's Presence.
a few minutes before the alleged theft, defendant, while on the back platform of another car near the place where the theft is supposed to have occurred, pushed or shoved himself in between the witness and his father. The objection urged against said testimony is that it tends to "indicate and insinuate" that defendant was attempting to commit another crime and therefore should have been excluded.

The question as to whether defendant was near the place of the alleged theft at the time of its occurrence was one of the important issues in the case. Defendant's evidence tended to establish an alibi. The above evidence tended to establish defendant's presence in the vicinity of the crime a short time prior thereto. The evidence as to the pushing tended to explain how the attention of the witness was called to defendant's presence and made more plausible and convincing the witness's statement that he was able to remember and identify defendant, whom he had never seen prior to the incident on the car platform.

The evidence was properly admitted for the purpose of showing defendant's presence at, or near, the scene of the crime a short time prior thereto, and was therefore, when considered with the other facts and circumstances in the case, some evidence tending to establish the identity of defendant as the person who committed the alleged theft. It is not a sufficient objection to evidence otherwise admissible to say that it

might prove the commission or attempted commission of another crime. [State v. Spaugh, 200 Mo. 571, l. c. 594; State v. Bell, 212 Mo. 111; State v. Collins, 181 Mo. 235, l. c. 260.] The court, by instruction, properly told the jury that they could consider the testimony for no other purpose than that of determining whether or not defendant was in that locality at about the time the offense charged in the information was alleged to have taken place.

II. During the closing argument the prosecuting attorney referred to defendant as a "foreign thief."

Remarks of Prosecutor.
To this remark defendant objected and saved an exception to the failure of the court to rebuke counsel and to admonish the jury not to regard the statement.

The evidence tended to show that defendant was guilty of larceny and that he was not a resident of St. Louis, but had just arrived at St. Louis, coming from Chicago. When the remarks of the prosecutor refer to matters shown by the proof his conduct in that regard does not constitute reversible error. [State v. Griffen, 87 Mo. 608; State v. Allen, 174 Mo. 689; State v. Rasco, 239 Mo. 535.] In this connection, however, it should be stated that conduct of this kind upon the part of the prosecuting attorney is not to be commended or encouraged. Many cases are reversed because prosecutors overstep the bounds of legitimate argument. And in many cases it is difficult to weigh the effect that such remarks may or may not have had in influencing the jury in arriving at their verdict. In all cases the wiser and much the safer course for the prosecutor to pursue is to confine his remarks to a fair discussion of the evidence and not indulge in the use of epithets or personal abuse.

Exception was also saved to the court's failure to rebuke counsel and instruct the jury to disregard the further statement made by the prosecutor in the course

of his argument, viz.: "Mr. Bischoff was not able to be here and we had to introduce his testimony and that testimony is conclusive and not contradicted by any evidence." The "Mr. Bischoff" to whom reference is here made is the man who conducted the fruit stand near the corner of Eighteenth and Market streets, in the city of St. Louis. The witness was not present at the trial, but his testimony, given at a former trial, was, by consent of the parties, read to the jury by the official stenographer. Appellant insists that this re-mark was a direct reference to defendant's failure to testify in his own behalf. We cannot agree with ap-pellant's contention. This was in the nature of a gen-eral comment as to the weight and effect of the evi-dence of the witness Bischoff and it would be a forced construction that would interpret it as a reference to defendant's failure to testify. The statement is quite different from the one made in State v. Snyder, 182 Mo. 523, which was held to be error. In the case of State v. Ruck, 194 Mo. 416, the prosecutor in his argument to the jury said: "Here we have testimony undenied, undisputed by no living or unliving wit-ness." In that case it was held that the statement did not violate the inhibition of the statute against referring to the failure of the defendant to testify. To the same effect is State v. Fields, 234 Mo. 615.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WIL-LIAMS, C., is adopted as the opinion of the court. All the judges concur.