# THE STATE v. GEORGE DEPRIEST, alias BROWN, Appellant.

## Division Two, June 23, 1921.

1. **APPELLATE PRACTICE: Sufficiency of Evidence.** It is not the province of an appellate court to determine the weight of the testimony; in deciding whether a demurrer to the evidence in a criminal case was properly sustained, it searches the record only to the extent of determining whether there was substantial evidence to support the verdict. And judged by this rule, the evidence in this case was amply sufficient to sustain the verdict that defendant was the person who, with gun in hand, robbed the prosecuting witness of thirty dollars or more.

2. **EVIDENCE: Refreshing Witness's Memory: Grand Jury Notes.** The testimony given before the grand jury by a witness for the State may be handed to him for the purpose of refreshing his memory.

3. **ARGUMENT TO JURY: Defendant's Failure to Testify: Comment.** It is not permitted to the prosecuting attorney to refer to and criticise defendant's failure to testify; but to say that "there has not been a witness here who says defendant was not" at the place where the robbery was committed, is not to comment on defendant's failure to testify.

4. **————: Defendant's Reputation: Injected by His Counsel.** Where defendant's counsel has in his argument to the jury stated that defendant "comes here with the best of reputation" it is not error for the prosecuting attorney to refute it by replying that no witness "said anything about his reputation," and that, if any witness had said anything about defendant's reputation he too "would have had something to say about his reputation." Such remarks were not comment on defendant's failure to testify, and defendant's reputation being injected into the case by himself, the prosecuting attorney had a right to refute the statement of his counsel that it was "the best," and the court did not err in refusing to discharge the jury because of the refutation made.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche*, Judge.

AFFIRMED.

*John P. Leahy* for appellant.

(1)   The defendant was not proved by the State to be guilty of this specific charge made in the indictment against him, and he was entitled to an acquittal, and his demurrer to the evidence should have been sustained. State v. Howell, 100 Mo. 639; State v. Woolard, 111 Mo. 256.   (2).   The presence of the defendant at the necessary time and place must be shown as essential to the commission of a crime.   If the defendant's evidence is sufficient to raise a reasonable doubt, or if the State's evidence is so defective as to raise a reasonable doubt, or if taking all the evidence on both sides there is a reasonable doubt of the defendant's guilt, he is entitled to an acquittal. State v. Jones, 71 Mo. 594; State v. Howell, 100 Mo. 628; People v. Fong Ah Sing, 64 Cal. 253; State v. Franke, 159 Mo. 535; State v. Hopkirk, 84 Mo. 288; State v. Powers, 130 Mo. 479; State v. Howard, 118 Mo. 140.   (3) It is a fundamental principle of the law of circumstantial evidence that each independent fact must be proved in the same satisfactory manner as if the whole issue rested upon that fact.   State v. Crabtree, 170 Mo. 654; Com. v. Webster, 5 Cush. 295; 1 Starke, Ev. 510.   (4) While the memory of a prosecuting witness may be refreshed by his testimony taken before the grand jury, it cannot be used for the purpose of impeaching him by the State. State v. Patton, 255 Mo. 257.   (5)   The failure of the defendant to testify cannot be referred to or criticized by the prosecuting attorney.   State v. Graves, 95 Mo. 510. (6)   A defendant charged with the commission of a crime comes into the court with the presumption of innocence and with a good reputation, and in the absence of evidence showing his reputation to have been bad, it is error on the part of the prosecuting official to state that he could prove his reputation to be bad.   State v. Lee, 66 Mo. 165.

*Jesse W. Barrett,* Attorney-General, *Albert Miller,* Assistant Attorney-General, and *R. W. Otto,* of counsel, for respondent.

(1)   The court did not commit error in overruling appellant's demurrer to the evidence and in submitting the case to the jury. The record discloses that there is substantial evidence of defendant's guilt. State v. Fields, 234 Mo. 627; State v. James, 216 Mo. 407; State v. Wooley, 215 Mo. 687; State v. King, 214 Mo. 390; State v. Stewart, 127 Mo. 293. (2)   The court did not commit error in permitting the use of the grand jury transcript · in the trial of this cause. (a)   It is competent for a witness to refer to his testimony taken before the grand jury to refresh his memory. State v. Patton, 255 Mo. 256; State v. Miller, 234 Mo. 597; State v. Carpenter, 216 Mo. 449; State v. Kennedy, 154 Mo. 286; McLin v. State, 48 Tex. Cr. 549. (b)   The conduct of counsel representing the State in the examination of witnesses for the State, in connection with the grand jury transcript, did not approach the character of impeachment. State v. Patton, 255 Mo. 257; State v. Whalen, 148 Mo. 289; State v. Duestrow, 137 Mo. 84. (c)   Where a witness is shown to be unfriendly or hostile to the prosecution, it is proper to allow the prosecution to ask him leading questions. State v. Kebler, 228 Mo. 382; State v. Draughn, 140 Mo. App. 267; State v. Duestrow, 137 Mo. 84. (3)   The argument of counsel representing the State, was legitimate and did not amount to a comment on the "failure of the defendant to testify." State v. Pfeifer, 267 Mo. 29; State v. Fields, 234 Mo. 625; State v. Whitsett, 232 Mo. 529; State v. Schmidt, 136 Mo. 651. (4) The argument of counsel representing the State as to the subject matter of proof or evidence concerning the "reputation" of the defendant was proper and legitimate, in view of the preceding argument made by counsel representing defendant. State v. Hyland, 144 Mo. 313.

RAILEY, C.—On October 6, 1919, the grand jury of the City of St. Louis, Missouri, returned into the circuit court of said city, an indictment charging that the defendant, George DePriest, *alias* Brown, on the 23rd day of September, 1919, in the City of St. Louis aforesaid, did feloniously assault one John B. McIntyre and, by force and violence to his person, feloniously and violently did rob, steal, take and carry away from the said McIntyre, the sum of thirty dollars, lawful money of the United States, with intent feloniously to deprive the owner of the use thereof, and to convert the same to his own use. On November 20, 1919, defendant was arraigned in the circuit court aforesaid and entered a plea of not guilty.

On December 18, 1919, the trial of the above cause was commenced before a jury.

The scene of the alleged robbery was a large room covering the entire upper floor, in the third story of a building, located at 705½ Pine Street, in the heart of the business district of the City of St. Louis. The building fronts on the north side of Pine, and runs back to an alley in the rear, about 100 feet. The above room, at the time of the alleged robbery, was occupied by the Waiters' Club of St. Louis. There was several pool tables in it, as well as card tables. A bar was located at the west side of the room, and back of the bar there was a small room where supplies were kept. There were two entrances to the Waiters' Club, one leading to the street, and the other leading to the alley at the rear.

The testimony on behalf of the State tends to prove the following facts:

John B. McIntyre testified, in substance, that he belonged to the Waiters' Union, and was a member of the Waiters' Club at 705½ Pine Street; that he was at said club on the morning of September 23, 1919; that he was sitting in the bar end of said room, on said morning, at the card table, and was *held up;* that about two o'clock on the morning of September 23, 1919, there were some thirty or forty men in the club playing cards; that three

men entered the club, one of whom was holding a gun and ·he commanded the members of the club to put up their hands; that he (witness) paid no attention to the man with the gun, but was watching the fellow doing the searching; that the latter just took what witness had; that all the men in the room were lined up, except six or seven, in the back room; that they took from witness between thirty and thirty-five dollars, of lawful money of the United States; that two of these men, after they got through, backed down the stairs; *that one of those who backed down the steps, was the man who held the gun, while they were being robbed;* that he is *certain* the man who held the gun was one of the two men who backed down the stairs; that he did not know what became of the third man; that the one who searched witness did not back down the stairway; that witness went to the window, and "hollered" to an officer below, "There goes two fellows that stuck up this club;" he could not swear defendant was the man who had the gun; he had known defendant for about two years before the trial, by the name of *Brown.* He further testified that he never knew him by the name of DePriest; that the man who held the gun had his hat pulled down over his face; that he could not swear that defendant was in the club that evening; that he was not able to tell *positively* who the man was that held the gun. Witness was shown the testimony which he gave before the grand jury, and then said, after reading same, that he could not *identify* defendant as the man who had the gun.

On cross-examination, witness testified that the man who *searched* him was *not* the defendant in this case; that the man with the gun *resembled* defendant, but he could not say it *was* defendant who had the gun; that as soon as witness ran to the window and "hollered," the officer ran to the alley and started to shooting; that the two men had their backs to witness, and when the latter "hollered," the two men ran into the alley.

Andrew Whalen, a night watchman, testified that on the morning of September 23, 1919, as he came to the

corner of 7th and Pine, he was accosted by officer Schrievers, and requested to hold a man by the name of Conklin, for him; that he did not see defendant that morning; that he heard two shots, but did not know who fired them; that Schrievers had Conklin right in front of the Waiters' Club, when witness came up; that Schrievers went north on 7th Street. On cross-examination, witness testified, that it was about three o'clock in the morning when he was left in charge of Conklin.

Charles F. Conklin testified, in substance, that he ·was manager of a billard hall; that on the morning of September 23, 1919, he saw defendant at 9th and Pine; that they were at the Maryland Drug Store; that he was at the Waiters' Club on the above morning, and met Dick Lambert there; that he had known *defendant* about one year or a year and a half; *that he talked with defendant at the above drug store; and the latter then went east on Pine Street in the direction of the Waiters' Club;* that he and Schrievers were talking one door west of the Waiters' Club, when two men came out of the latter; that he got a glimpse of them; that they were going west on Pine Street, and were right in front of witness; that he heard some one call from the Waiters' Club, and they said, *"Stop those fellows, they just held us up"* or *"stuck us up;"* that he heard the call from the club *after* he had gotten a glimpse of these two men and they had passed on west; that officer Schrievers called his attention to Brown; that defendant had been drinking the night before; that he did not recognize either of the two men who passed while he was west of the Waiters' Club; that Schrievers said, as these two men passed: "There goes One-Eye now;" that defendant was called "One-Eye" or Brown; that Schrievers said it was Brown, but witness just got a glimpse of him; that when Schrievers called attention to "One-Eye," whom he knew to be Brown, he looked over his shoulder and saw Brown.

Thomas Lewis, manager of the Waiters' Club, testified, in substance, that he did not see the man with a

gun, but saw the searchers; that he did not know defendant.

Charles Schrievers, a member of the police force, testified, in substance, that he was night watchman, on the morning of September 23, 1919; that he was searching Conklin just west of the Waiters' Club on the above morning when *defendant, known as Brown,* came out of the Waiters' Club entrance; that he said to Conklin, *"There goes your friend Brown,"* and Conklin answered, "Yes;" that they went into the alley and got about halfway in when McIntyre called out the window to witness, or somebody standing on the sidewalk, "Get those two fellows; they just stuck up the place;" that witness started out after them into the alley, and they were waiting to see if he was coming; that just as he started in, they ran through the alley to 7th Street, and witness fired two shots; that he was *sure* defendant, George DePriest, *alias* Brown, was one of the two men; *that he had known Brown for sometime and was not mistaken about defendant being one of them.* On cross-examination, witness said he saw defendant and the other man come right out of the club hall; that only two men came out of the club at that time; that he (witness) fired three shots altogether.

T. George Dineen, detective sergeant, testified, in substance, that he had known defendant about five years; that he arrested defendant at 2905 Easton Avenue, St. Louis, Missouri; that defendant was asleep when witness got there; that he found two loaded revolvers under defendant's bed; that defendant said to witness, *"My big friend took several shots at me;"* that he meant Schrievers, in speaking of his "big friend;" that he asked defendant who was with him, in speaking of the hold-up, and defendant said he didn't know who was with him, he might have taken somebody out of the club to do the searching; that he told defendant he was suspected of being in the hold-up.

288 Mo.—30

Oscar L. Collard, a detective sergeant, testified, in substance, that he arrested defendant, George DePriest, *alias* Brown, on the 23rd of September, 1919; that he found two loaded revolvers under the bed where defendant was sleeping; that defendant told witness that *his big friend S,chrievers shot at him;* that witness asked defendant who was with him, and defendant said he was by himself; that witness then asked him *who it was that did the searching,* and he answered, "I don't know, I guess it must have been some fellow I picked out of the crowd." On cross-examination, witness testified that defendant didn't say *directly* that he did the holding up.

At the conclusion of the testimony, defendant interposed a demurrer to the evidence, which was overruled. The court gave to the jury instructions, 1, 1a, 2, 3 and 4. Defendant objected to each and all of said instructions, except number 4, which was unobjected to by appellant. The instructions, and rulings of the court, as well as the argument of counsel, will be considered in the opinion. The jury returned into court the following verdict:

"We, the jury in the above entitled cause, find the defendant guilty of robbery, in the first degree as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for ten years.

"GEORGE F. EATON, Foreman."

Appellant, in due time filed motions for a new trial and in arrest of judgment. Both motions were overruled.

On March 4, 1920, defendant was duly sentenced, and judgment entered in accordance with the verdict aforesaid. Appellant, in due time, appealed the cause to this court.

I. Appellant contends that his demurrer to the evidence should have been sustained. We have made a very full statement of the facts, with the view of considering

Demurrer
to Evidence.                      this question. It is not our province to pass
upon the weight of the testimony and, hence,
we will only determine whether the record pre-
sents substantial evidence upon which the verdict can be
sustained. It is clear, that the prosecuting witness, John
B. McIntyre, was robbed, in the City of St. Louis, and
State of Missouri, of thirty dollars, or more, of lawful
money of the United States, as charged in the indictment.
While McIntyre did not recognize defendant as the man
who held the pistol, yet he did say *that defendant looked
like the man who had the gun.* He likewise testified
*positively, that the man who held the gun on him, with
one of the others engaged in the robbery, backed out of
the club and down the stairs.* Charles Schrievers, the
policeman, testified that he saw *defendant* and another
man coming out of the Waiters' Club, and that he told
Conklin, who was with him, that his friend Brown was
passing by, and Conklin also recognized this *defendant,*
who was known as "One-eye," or Brown, and who was
then passing along Pine Street, a short distance from the
Waiters' Club entrance. Schrievers also testified that
McIntyre called out of the club-house window and "hol-
lered": *"Get those two fellows, they just stuck up the
place."* Schrievers is corroborated, as to the above state-
ment, by McIntyre and Conklin. Soon after the above
hallooing by McIntyre, *defendant* and his companion
started down the alley, were chased by Schrievers, and
three shots were fired after them before *defendant* finally
escaped. When appellant was aroused from his sleep by
two policemen, he had two loaded pistols under his bed,
and told them that *his big friend Schrievers had shot at
him the night before.* Collard, one of said policemen,
then asked defendant who was with him, and he said he
was by himself. Collard then asked him who it was that
did the *searching,* and he said, "I don't know, I guess
it must have been some fellow I picked out of the crowd."

The foregoing circumstances, in connection with
other corroborating facts heretofore set out were amply

sufficient to warrant the jury in finding that *defendant* was the man who held the gun on McIntyre and others, while they were being robbed. We are, therefore, of the opinion, that the trial court committed no error in overruling defendant's demurrer to the evidence.

II. Appellant asserts that: "While the memory of a prosecuting witness may be refreshed by his testimony taken before the grand jury, it cannot be used for the purpose of impeaching him by the State."

Grand Jury Notes. We are cited to State v. Patton, 255 Mo. l. c. 257, as an authority in support of this contention.

We have no fault to find with the principles of law declared in the Patton case, which were followed in the later case of State v. Riles, 274 Mo. l. c. 623-4, 204 S. W. 1-2. The testimony taken before the grand jury was not offered in evidence in this case, nor was any part of same stated to the jury. On the contrary, the testimony given by McIntyre before the grand jury was submitted to him, with the request that he examine same. He was then asked, after refreshing his memory, if he could identify defendant as the man who held the gun, and he answered that he could not, but said the man with the gun, looked like defendant. We are of the opinion that the trial court was within the law,

Comment: Defendant's Failure to Testify. in respect to foregoing matter. In addition thereto, no harm was done defendant, as the witness, after examining his testimony given before the grand jury, reiterated what he had previously said, that he could not swear defendant was the man who had the gun.

III. Appellant contends that his failure to testify could not legally be referred to or criticised by the prosecuting attorney in the presence of the jury. In support of this assertion we are cited to State v. Graves, 95 Mo. 510, in which defendant testified as a witness in his own behalf. The prosecutor, in the above case, commented on some matters which defendant might have testified

about; but failed to do. This court, speaking through
NORTON J., reversed the case on account of said com-
ments. BRACE and SHERWOOD, JJ., dissented.

The Graves case, relied on by appellant, was, in
express terms, overruled in State v. Larkin and Harris,
250 Mo. l. c. 244-5. Aside from its being overruled, it
has no application here, because the defendant testified
as a witnes therein. The principle of law contended for
by defendant is correct, when applied to the facts of
this case, as defendant was not on the witness stand. It
will, therefore, be necessary to turn to the record, and
ascertain what actually occurred, in passing upon above
complaint.

The prosecuting attorney was reviewing the evi-
dence relating to the identity of defendant, *alias* Brown,
as the man who held the gun while McIntyre and others
were robbed. In considering the testimony of policeman
Schrievers, the prosecutor said: "Now, he had all that
opportunity to see this man Brown. Now, if Brown did
not do anything, and you must say Brown was there,
that is the only testimony you have here, he must have
been there, there hasn't been a witness here who says he
was not there." The foregoing was objected to as be-
ing a comment on defendant's failure to testify in the
cause. We are of the opinion that the above remarks,
complained of by appellant, did not constitute a comment
on the failure of defendant to testify as a witness in the
cause. [State v. Fields, 234 Mo. l. c. 625-6; State v. Ruck,
194 Mo. l. c. 440.] In State v. Fields, at pages 625-6, we
said:

"In the closing argument to the jury the prosecuting
attorney said: 'The State has proved certain facts; has
brought a large number of witnesses before you whose
testimony has not been controverted by the defendant's
witnesses.' This language was objected to by counsel
for defendant, 'for the reason that the defendant is not
obliged to take the stand.' The court thereupon admon-
ished the prosecuting attorney that he had no right to
comment on the fact that the defendant did not take the

stand. The defendant's counsel then excepted to the re-
mark of the court. It is now contended by appellant
that prejudicial error was committed in the remarks both
of the prosecuting attorney and of the court.

"As to the alleged improper remarks of the pros-
ecuting attorney we are of the opinion that the language
was not open to the construction that it was a comment
on the failure of the defendant to testify. The words
'the defendant's witnesses' are not fairly susceptible of
such an interpretation, nor is there anything in the
record to indicate that they were so intended. We hold
that the prosecuting attorney was within the bonds of
legitimate argument and that his conduct was not open
to the objection made or deserving of admonition from
the court."

In State v. Ruck, 194 Mo. 1. c. 440, the prosecuting
attorney, in his argument to the jury, said:

"Here is a case that seems to me calls for the punish-
ment that should be made to fit the crime. Here we
have testimony *undenied, undisputed* by no living or un-
living witness." (Italics ours.)

The prosecutor was here interrupted by counsel
for defendant, on the ground that said remarks con-
stituted a comment on the failure of defendant to tes-
tify in the case. We held that the language above quoted
was not a comment on defendant's failure to testify.

We are of the opinion that counsel for the State
was within the law, in making the above statement com-
plained of by defendant.

IV. Appellant likewise complains of that part of
the prosecuting attorney's argument in closing the case,
as follows:

"Now, Mr. Leahy says that this man comes here
with the *best* of reputation. Did you hear anything about
reputation here? Did you hear anyone say anything
about his reputation, and if he had said something
about his reputation, I would have had something to
say about his reputation."

Appellant's counsel objected to the above remarks on the ground that it was a comment on defendant's failure to testify as a witness. The court was not asked to rebuke counsel, but to discharge the jury.

Mr. O'Brien, representing the State, in justification of his remarks, said:

"When Mr. Leahy mentioned the fact about his reputation, that gave me the right to talk about it. Up until that time I had no right to mention his reputation and I could not say a word about his reputation until his reputation was put in issue by himself." .

The trial court heard Mr. Leahy's argument, and as defendant's counsel did not deny having told the jury that defendant "comes here with the best of reputation," appellant is in no position to complain of said remarks. The trial court very properly refused to discharge the jury, as requested by defendant.

. The objection urged to prosecutor's remarks is disposed of adversely to appellant's contention, in State v. Hyland, 144 Mo. l. c. 313-4, where we said: .

"Lastly, it is insisted that error occurred in not rebuking the statements of the prosecuting attorney in his argument that 'crimes of this character are becoming too frequent' and to the further statement as follows: 'The character of this man is not an issue in this case. It couldn't have been put in by the State. I say to you there is no evidence as to the character of this defendant, because Mr. Kimbrell didn't make that an issue in this case. If he had made that an issue in this case and opened the doors the testimony would have been before the jury. He tells you that this man is a law-abiding man; nothing against him, when he knew under the law we couldn't make that an issue. Isn't it a little bit singular that after living here twelve or fifteen years he couldn't produce a witness to show that he was that kind of man.' Now as to these observations of the prosecuting attorney, there is absolutely nothing in the first. He merely voiced a truism. It is lamentably true that

criminal acts like the one under investigation are too common. [State v. Emory, 79 Mo. 461; State v. Hopkirk, 84 Mo. l. c. 288.] As to the remark in regard to the character of defendant as a law-abiding man, the prosecuting attorney correctly told the jury that no such issue had been tendered and the character of the defendant had not been shown, and the State could not have made it an issue in the first instance. On its face it shows that it was a legitimate reply to the unsupported assertion that defendant was a law-abiding man with nothing against his character. The prosecuting attorney very properly insisted there was no such evidence and if defendant desired his good character to be considered as a part of his defense he ought to have produced at least some one witness that he was that kind of a man.

"There is no merit in the contention that there was error in rebutting defendant's unfounded statement that he was a law-abiding citizen. He had no right to inject that issue into the argument and complain if it was promptly met and refuted."

V. It is insisted by defendant that the *corpus delicti* was not shown by the State in this case. There is no controversy over the fact that the prosecuting witness, on the morning of September 23, 1919, was held up at the point of a gun, and robbed, while in the Waiters' Club, of $30 in lawful money of the United States. We have heretofore shown, under proposition one of this opinion, in considering the demurrer to the evidence, that there is substantial testimony in the case, tending to show that defendant was the man who held the gun while McIntyre and others were being robbed. The foregoing contention is without merit and overruled. [State v. Schyhart, 199 S. W. l. c. 211, and cases cited.]

Corpus Delicti.

VI. We have examined the instructions given in the case, and find that they are fair to defendant, and properly covered all the law necessary to aid the jury in passing upon the case.

VII.   Upon a careful consideration of the law and facts relating to this case, we find no error of which appellant can legally complain.  He received a fair and impartial trial, and was convicted upon substantial evidence.  The judgment below is accordingly affirmed. *White* and *Mozley, CC.*, concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.   All of the judges concur.