STATE OF MISSOURI, Respondent, v. JOHN LEWIS JOHNSON, Appellant, No. 42485—245 S. W. (2d) 43.

Court en Banc, December 10, 1951.

Rehearing Denied, January 14, 1952.

*David M. Grant* for appellant.

*J. E. Taylor*, Attorney General, and *W. Brady Duncan*, Assistant Attorney General, for respondent.

836

██ ELLISON, C. J.—The appellant was convicted of murder in the first degree under Sec. 559.010, R. S. 1949, Sec. 4376, Mo. R. S. A. and his punishment assessed at death, for shooting with a pistol and killing one Pelham C. Scott, a member of the police force of Overland in St. Louis County. His motion for a new trial assigned ·error on ·four grounds, the first three of which complained that there was no substantial evidence to support the verdict; that it was against the law and the evidence; and that it was against the weight of the evidence and the result of bias, prejudice and passion.

The fourth ground was split into 91 separate specifications of error, nearly all of which dealt with the admission and exclusion of evidence. Sec. 547.030, R. S. 1949, Sec. 4125, Mo. R. S. A. provides the motion for a new trial in a criminal case "must set forth in detail and with particularity, · * * * the *specific* grounds or causes therefor." Nearly all of these 91 grounds in this fourth paragraph failed to comply with that requirement. The brief of appellant's counsel states that while he "urges each and every ground contained, in said motion, he has ·chosen to argue only" grounds 83, 91, 3, 5, 53, 55, 56, 60 and 61. The first two of these both complain of prejudicial argument by the prosecuting attorney to the ██ jury. If there are any other grounds in the motion that require consideration we shall refer to them later in this opinion. We adopt substantially, without quotation marks, the statement of facts contained in appellant's brief, as follows.

About 11 p. m. on October 14, 1949, appellant and one Cheeks, each driving separate cars, were stopped by the deceased (Scott) and another policeman, Juettemeyer, both being members of the Overland police force, about ¼ mile west of the limits of that city. The immediate reason for the apprehension is not clear but the car appellant was driving was proved to have been stolen a few days prior thereto. The men were brought to the Overland police station where appellant gave a wrong name as his own and presented a draft registration card also not his. The car appellant was driving was inspected by Juettemeyer and a third officer, Brinker, and found to have a device on it, known as a "jumper" which enabled it to be operated without use of an ignition key.

While this inspection was proceeding outside the police station appellant and Cheeks were being booked within by the deceased Scott and one Albrecht, night clerk at the station. Scott had some colloquy with appellant over his failure to give his right name, during

which [according to Cheeks] Scott first slapped appellant and later knocked him down. Albrecht, called by the State, denied any striking of appellant by deceased. Shortly thereafter the telephone rang and deceased turned and answered it. Appellant in a quick movement left a nearby chair where he was seated, grabbed deceased's service revolver from the holster in which he was wearing it, and said to Scott "I've got you now."

According to witnesses for the State, appellant then made his way to the head of the stairway which leads down and out of the west side of the building where the car was being inspected. He stumbled but got to the foot, where the door is located, just as Juettemeyer and Brinker were about to enter. Some shots were fired through this door by appellant and Juettemeyer was fatally wounded. Another shot, which lodged in a parked car, was fired through a garage door in the north part of the building's basement.

Appellant then left the building through the aforesaid west door, procured Juettemeyer's service revolver, and shot Scott as the latter was crossing a lawn on the southwestern portion of the premises. He then procured a car from a driveway of a private person, Whitworth, drove to St. Louis City discarding the remaining bullets and spent shells from the two revolvers during the ride, threw the two revolvers in a sewer after abandoning the car, and went to his room in that city where, about five hours later, he was arrested. The revolvers were recovered from the sewer where appellant had thrown them. A statement in the nature of a signed confession was admitted in evidence over appellant's objections that it was not voluntary. He testified on that issue, but not in the presence of the jury.

Of the nine assignments which appellant's counsel "chose to argue" to this court, assignment 83 complained of the trial court's refusal to declare a mistrial because the prosecuting attorney in his opening argument to the jury said: "Now, we were talking about death. Death that we are requesting to be the sentence in this case. To do so, you must believe beyond a reasonable doubt that Pelham Scott was killed by that man who sits there in that chair. You must believe he did it in cold blood, in effect what His Honor has told you, if you find his blood was hot and enraged, then it would be second degree murder. And you could give him from ten years to life. Now, to predicate murder in the second degree, you would have to believe Cheeks' story. You would have to believe that the defendant was slapped, slugged, knocked down, kicked, and a pistol pointed at him, and that he was so enraged with that that he had no deliberate mind. *What evidence do you have of the condition of his mind?, Even if you believe Cheeks, who I tell you was a perjurer * * *.*"

At that point appellant's counsel objected, out of the hearing of the jury, on the ground that the italicised argument was a comment on the appellant's failure to testify, in violation of Sec. 546.270,

R. S. 1949, Sec. 4082, Mo. R. S. A., but the court overruled the objection, stating that the prosecuting attorney's argument referred to Cheeks' testimony and not to appellant's failure to testify.

We think the trial court's ruling was correct. The prosecuting attorney was arguing to the jury that appellant should be convicted of murder in the first degree—cold blooded murder—and not murder in the second degree on the perjured testimony of appellant's witness Cheeks that appellant had just been beaten by the police and was enraged thereby. Immediately following that the prosecutor asked the mooted question "What evidence do you have of the condition of his mind? Even if you believe Cheeks, who I tell you was a perjurer —." Then came the interposed objection by appellant's counsel. Evidently the prosecutor when thus interrupted was about to refer to other testimony in the record [at least it was there] showing appellant was not beaten; that he suddenly seized Scott's revolver, saying "I've got you now," and fled downstairs where he shot and killed officer Juettemeyer through a door and officer Scott on the lawn.

The brief of counsel for appellant here asserts there was not, and could not be, any evidence on the condition of his mind except such as came from his own lips, since he alone knew what that condition was. Thence counsel maintains the prosecuting attorney's argument *necessarily* was a clear comment on appellant's failure to testify. But counsel is entirely mistaken. If that were true malice, willfulness, deliberation and premeditation could be proved only by the accused, himself; and he could defeat a prosecution for murder merely by withholding his own testimony, which he has a right to do under Art. I, Sec. 19, Const. 1945. But it stands conceded here [on the whole case] that after stealing the automobile he took the lives of two police officers in an effort to escape apprehension and arrest. This evidence alone was enough to justify the jury in concluding he acted willfully, deliberately, premeditatedly and with malice aforethought.

Malice may be presumed from an intentional killing with a deadly weapon, State v. Whited, 360 Mo. 956, 960(1), 231 SW. (2d) 618, 620(3). And deliberation and premeditation likewise may be inferred from the circumstances of the homicide in a first degree murder case. State v. Cade, 326 Mo. 1132, 1137(3), 34 SW. (2d) 82, 83 (1-4); State v. McCracken, 341 Mo. 697, 701(4), 108 SW. (2d) 372 (4, 5); State v. Kenyon, 343 Mo. 1168, 1177(3) 126 SW. (2d) 245, 249(4); State v. Lyle, 353 Mo. 386, 391(4), 182 SW. (2d) 530, 533 (6, 7); State v. Holland, 354 Mo. 527, 542(5), 189 SW. (2d) 989, 997 (8, 9).

 Another assignment, No. 91, in appellant's brief which his counsel chose to argue, bears on a part of the prosecuting attorney's closing argument wherein he said: "Now what is there to this case?

Pelham Scott has been killed. Shot to death. There sits the man that shot him. Is there any doubt about that in anybody's mind? Did *they* make any defense of it?" Thereupon appellant's counsel interposed the objection: "If your Honor please, I object to that and ask that it be stricken, and I ask for a mistrial at this time for that statement, 'did *he* make any defense of it'." [Emphasis ours]. This latter quotation using the word "he" was incorrect. The transcript shows the prosecutor said "they".

The question on this assignment is whether by the use of the quoted words "Did they make any defense of it?" the prosecutor referred to the failure of *the defense as a whole* to combat the fact that appellant shot and killed officer Scott [which is a conceded fact], or whether it was a comment on the appellant's failure to testify. Appellant's counsel of course takes the latter view, but we do not agree.

The only cases cited and discussed in appellant's brief on this point are: State v. Robinson (Mo. Div. 2) 184 SW. (2d) 1017, 1018, and State v. Shuls, 329 Mo. 245, 250-1(7), 44 SW. (2d) 94, 96(9). We think they are not in point. In both of these cases three persons, including the defendant, were present at the perpetration of the crime. In the Robinson case one of two witnesses later died. The prosecuting attorney in the Shuls case argued to the jury that *all* the eyewitnesses had testified ■ *"except one."* [Italics ours]. In the Robinson case he argued the *surviving* eyewitnesses had testified "except one." The jury of course knew the defendant was the one who had not testified, and it was held the argument violated the foregoing statute, Sec. 546.270.

Appellant also cites without discussion two other decisions more nearly in point.[1] In the Tiedt case the prosecutor's references to the defendant's failure to testify were held *retaliatory* and provoked by the arguments made by his counsel. In the Dodo case the prosecutor argued: "Counsel for the defendant makes no defense. (Objection made). Wait till I get through. For the reason that he (defendant's counsel) had an opportunity to present to you gentlemen his views and his words in behalf of his defendant who he is trying now, without any evidence on his part submitted." At the close of the argument the Court addressing the jury, said: "The defendant is not compelled to take the stand, and you will disregard what (the prosecutor) said about that." [Parenthesis ours].

It will be noted the prosecutor in this Dodo case said that defense counsel therein "had an opportunity to present his views * * * in behalf of his *defendant* * * * without *any* evidence on his part submitted." [Emphasis ours]. This was a rather obvious reference

---

[1] State v. Dodo (Mo. App.) 253 SW. 75, 76(3); State v. Tiedt, 360 Mo. 594, 602-4(6), 229 SW. (2d) 582, 586-8 (7-12), 591-2.

to the fact that the defendant had not testified. And, as said in the Tiedt case, the direct statement of the Court to the jury that the defendant was not compelled to testify, accentuated the error. We hold neither of these decisions convicts the trial court of error in the instant case.

Of the remaining seven argued assignments, Assignment 3 complains that the trial court erred in refusing to grant appellant's challenge of a member of the jury panel, Rex D. McIntire, on the ground that he was prejudiced; and that appellant consequently was forced to exhaust a peremptory challenge in striking him from the jury list. Counsel asks that we so rule as a matter of discretion in the interest of fairness.

The transcript shows that nearly all the members of the panel were asked whether they had read newspaper accounts of the homicide, including reports that a relief fund was being subscribed for the dependents of the two policemen. The examination of this juror covers 13 pages of the transcript. Much of it was conducted by the Court, especially the latter part. He stated he had read the newspaper articles and did form an opinion from them at the time, which was revived by the trial, but that he wouldn't say he would retain that opinion until he "heard all the details." He admitted he still had the opinion based on the newspaper accounts, and that it would take evidence to change it. Then he said he had no opinion as to the guilt or innocence of the defendant and was not prejudiced; that his opinion was based on the newspaper accounts; and that "if the evidence is presented here rightly I will decide upon the facts presented." He said he had no doubt of that, and that he understood the defendant is presumed innocent until proven guilty. It was also shown he owned and operated filling stations which had been robbed by hold-ups.

We hold the juror was fair minded and qualified. Indeed, appellant's counsel said "I think the juror is doing his best to be honest and truthful." Appellant's counsel complains that during his examination of this juror he was unduly interrupted by the Court. But we find no just basis for this complaint. The assignment is overruled on authority of such decisions as State v. Tiedt, 360 Mo. 594, 597(1), 229 SW. (2d) 582, 584(1) and State v. McCracken, 341 Mo. 697, 700(1), 108 SW. (2d) 372, 373(1).

Appellant's assignment 5 charges the trial court erred in overruling his counsel's objection to the testimony of witness Paul concerning a conversation he had with the deceased officer Scott and other persons, out of the presence of the appellant some one-half hour before the homicide. Paul's testimony covers about 50 pages of the abstract. In substance he said he saw officers Scott and Juettemeyer apprehend and search the appellant and Cheeks, each driving a Buick automobile, at a point some distance from the police station.

Paul had with him in his own automobile his wife and her nephew, 7 years old. He asked officer Scott if he needed help, and Scott said "No, go see if you can help Mr. Juettemeyer." He left his car parked at that place with his two passengers in it, and drove the Buick automobile taken from Cheeks to the police station. The other Buick arrived in a few minutes. He saw the police clerk, Albrecht, there. Officer Juettemeyer soon took him back to where he had left his car parked.

When witness Paul testified to the foregoing answer of officer Scott directing him to go see if he could help officer Juettemeyer, appellant's counsel interjected: "I object, your Honor, to any conversation with his girl friend, Sergeant Scott or anybody else." The Court overruled that objection and counsel excepted, adding: "I object to any conversation between this witness and anybody not had in the presence of the defendant." And again the Court overruled the objection.

The theory of appellant's counsel is that this conversation was incompetent because it was not a part of the res gestae attending the homicide, since it preceded the latter by at least 30 minutes and therefore was too remote. That possibly may be true—at least it may be conceded in the present discussion. But we do not understand the foregoing evidence was offered as bearing on the homicide itself. Counsel's brief concedes it was relevant as bearing on the *arrest* of the defendant and Cheeks, which was made on suspicion without a warrant. And witness Paul was cross-examined closely as to the conduct of appellant and Cheeks—how far apart their automobiles were; how fast they were going; and whether their lights were on. And there was no objection to that. Officer Juettemeyer had the right to make the arrest on reasonable suspicion without a warrant. State v. Nolan, 354 Mo. 980, 990(5), 192 SW. (2d) 1016, 1021(10). And he had the further right to call witness Paul to help him in taking the appellant and the property (the two automobiles) into custody. State v. Parker, 355 Mo. 916, 920(1), 199 SW. (2d) 338, 339 (1, 2).

The last assignment briefed by counsel for appellant is based on assignments 53, 55, 56, 60 and 61 in his motion for a new trial. All of these except assignment 60 are too vague and indefinite to comply with the statute on motions for new trials in criminal cases, Sec. 547.030, Sec. 4125, Mo. R. S. A., which requires the assignments therein to be detailed and specific. Assignments 53, 55, 56 and 61 merely complain that the trial court erred in permitting the State: [53] to cross-examine witness Cheeks "on his testimony before the coroner"; [55] "to improperly use a transcript of evidence given before the Grand Jury by witness Cheeks"; [56] "to attempt impeachment of witness Cheeks on a matter wholly immaterial to the issues in this case, by use of testimony the said witness gave before

a Grand Jury investigating the instant matter''; [61] ''to interrogate witness Cheeks in a repetitious and argumentative manner and particularly on matters plainly not within his knowledge and immaterial to the issues involved in the instant case.''

Assignment 60 in the motion for a new trial complained that the Court allowed the State ''to attempt impeachment of witness Cheeks by showing that he gave Grand Jury one address as his own residence and gave another before this petit jury, the question as to Cheek's residence being wholly immaterial to the issues before said petit jury on the instant trial and its issues.''

The evidence bearing on that assignment was as follows. Witness Cheeks testified on direct examination that he lived with his mother at 3226 Lucas Avenue in St. Louis. On cross-examination he said he lived there on October 14, 1949, which was the date of the homicide. He denied living with appellant's sister Anna Mae Cook as his common law wife at another address, 3050 Thomas Street on that date. When asked if he gave the latter address [to whom the record does not show] he said, ''Perhaps I did, I don't remember.'' Being further ▮ asked if he gave that address to the grand jury he said, ''Perhaps I did.'' In answer to another question, whether he told the grand jury he was living at 3050 Thomas Street, he said ''I could have. I don't remember.'' On inquiry as to whether he gave the same address to the coroner's jury he said ''I told you I didn't remember.'' But he denied giving that address to the police.

However he admitted knowing appellant's sister for five years, and that she lived at the Thomas Street address. The sister, Anna Mae Cook, testified she lived at that address; that she had been separated from her husband for five years, the same length of time that Cheeks had known her; that he was her sweetheart; and that he occasionally spent a night at her home. Appellant in testifying outside the presence of the jury with reference to the voluntariness of his confession referred to Cheeks as his brother-in-law, and then denied it.

The objection made here by appellant's counsel in assignment No. 60 is that the question of Cheeks' residence was *wholly immaterial* to the issues before the jury, not that it was prejudicial to appellant's case. We think this testimony did tend generally and collaterally to impeach or weaken the character and testimony of Cheeks and Anna Mae Cook as witnesses. And it had some bearing on the case. If believed it indicated a certain acquaintance or intimacy between appellant and Cheeks through the former's sister, such as would be more likely to exist between persons about to engage in a larcenous enterprise.

▮ This disposes of the seven assignments covered [though meagerly] in appellant's brief. But it leaves untouched the remaining 84 assignments in the motion for new trial, which appellant does not argue. All, or nearly all, of these are too indefinite to comply with

the requirement in the new trial statute, Sec. 547.030, supra. Nevertheless the brief declares that appellant's counsel "urges each and every ground contained in said motion."

The general rule is that when an appellant in a criminal case files no brief in the appellate court that court will look to the record proper and the valid assignments of error in the motion for new trial. When it is briefed, assignments in the motion omitted from the brief, or not stated with particularity, as required by Sec. 547.030 will be ignored or treated as abandoned. This has been the rule at least since that statute was enacted in 1925. The question here is whether this court must consider on appeal assignments in the motion for new trial which have been abandoned here by appellant's failure to cover them in his brief. Can he do the latter and still retain them in the case merely by declaring he has "chosen to argue" only part of the assignments in the motion but that he "urges each and every other ground contained" therein? We think not.[2]

Of these decisions just cited, the *Mason* case limited its holding to a ruling that appellant cannot invoke assignments which have been impliedly eliminated by omission thereof from his brief. The *Huett* case restricted its view to "the grounds or contentions briefed." The *Watson* case "examined" assignments in the motion for new trial which were not referred in appellants' points and authorities, but refrained from discussing them. The *Goffstein* case by the same author declined to discuss the non-briefed assignments. The *Davit* case [life imprisonment] treated the non-briefed assignments as abandoned. The *Kenyon* decision affirmed a capital case, but discussed *ex gratia* both the valid assignments in the motion for new trial and those made in appellant's brief filed by new counsel, so far ▆▆▆ as cognizable. The *Lawson* case held "It is very doubtful whether an appellant is entitled to a review of assignments merely because he says he is not abandoning them when in fact he is." The *Ramsey* case, also affirming a capital punishment, ruled: "There were other assignments in defendant's motion for new trial which were not briefed and should be considered abandoned," citing the Mason and Davit cases, but it added "However we find no merit in them." The *Tiedt* decision, likewise an affirmed capital case, held the motion for new trial failed sufficiently to preserve an assign-

---

[2]State v. Mason, 339 Mo. 874, 875, 878(1), 98 SW. (2d) 574, 575(2), 577(4); State v. Huett, 340 Mo. 934, 937(1), 104 SW. (2d) 252, 253(1); State v. Watson (Mo. Div. 2) 104 SW. (2d) 272, 276(3); State v. Goffstein, 342 Mo. 499, 510(3), 116 SW. (2d) 65, 71(11); State v. Davit, 343 Mo. 1151, 1154(1), 125 SW. (2d) 47, 49(1); State v. Kenyon, 343 Mo. 1168, 1176(1), 126 SW. (2d) 245, 249(1); State v. Lawson, 352 Mo. 1168, 1176(5), 181 SW. (2d) 508, 513(10); State v. Ramsey, 355 Mo. 720, 732(7), 197 SW. (2d) 949, 957(14); State v. Tiedt, 360 Mo. 594, 605(7), 229 SW. (2d) 582, 589(13).

ment of error on prejudicial argument of the State's counsel, and refused to pass on it.

The transcript in this case contains over 1200 pages. Most of the assignments in the appellant's motion for new trial state mere abstractions or conclusions. In no instance does appellant's brief refer to the pages of the long transcript to which the assignment is referable. For instance the testimony of one of the State's main witnesses, Chief of Police Hairgrove, mainly on appellant's confession, appears in three different places in the transcript, totaling 147 pages—out of the presence of the jury three times, and before them twice. We have read and reread the transcript of the evidence, particularly that bearing on the unbriefed assignments 31-6, 37, 39, 62, 77, 78, 82 and 87.

The fact that appellant shot and killed officer Scott is admitted here in appellant's statement of the facts. In view of that admission the question whether appellant's confession was coerced is not so important especially since the State's evidence was to the contrary. Neither is the state of the public mind after the homicide, or the admission or exclusion of evidence complained of in the motion for new trial, but left undiscussed here.

Appellant's counsel conducted the defense ably and unassisted. He was alert in interposing objections to evidence which he deemed incompetent. But we do not feel justified in overturning the jury's verdict, despite our repeated decisions in other cases holding that where the defense fails to brief assignments in the motion they will be treated as abandoned here. The appellant cannot do that and yet claim here he still "urges" them. The verdict and judgment are affirmed.

*Hyde, Hollingsworth, Dalton* and *Leedy, JJ.,* concur; *Conkling, J.,* dissents in separate opinion filed; *Tipton, J.,* dissents and concurs in separate dissenting opinion of *Conkling, J.*

▮ LEEDY, J. (concurring).—I concur in the principal opinion, but in view of the division among us on the question of the state's argument, I desire to make these additional observations in amplification of my views in relation to that matter.

In my opinion, the construction given (both by the trial court and by the principal opinion) the first of the challenged bits of argument ("What evidence do you have of the condition of his mind?") as referring to the testimony of defendant's witness Cheeks, and not to the failure of the defendant to testify, is further supported and made abundantly clear by the very next utterances of the assistant prosecutor as he resumed his argument, thus:

"MR. HOUGH (continuing): Did *Cheeks* tell you immediately he [defendant] was indignant, abused, hurt, he grabbed the pistol and

shot Pelham Scott? No, he did not. * * * Was Pelham Scott shot at that moment? Even if we believe Cheeks? Whom I tell you is an unqualified perjurer? Even if you believe, did he tell you Scott was shot at that moment?"

In the light of such a record, I cannot believe that the remark complained of would be taken and understood by the jury as a reference to defendant's failure to testify, in violation of § 546.270, RSMo 1949.

Proceeding to a consideration of the second portion of the challenged argument ("Did they make any defense of it?"), it is not amiss to note that the record fails to show it was objected to at the trial as being a reference to defendant's failure to testify. The first appearance of that objection came in the motion for new trial, which was too late. But apart from this (which is not raised by the state), I put my concurrence upon the broader proposition involved in the merits of the question presented.

Counsel for defendant appears to have consumed about an hour in argument (24 pages of the transcript), during the course of which he never at any time made reference to the facts and circumstances immediately surrounding the killing. Nor did he point out or attempt to argue any distinction between the different degrees of the crime of murder, as submitted by the instructions. The prime, if not entire, object and purpose of the argument appears to have been an adroit effort to induce a verdict in a grossly aggravated case whereby defendant would escape infliction of the extreme penalty. It was in that setting, and obviously in answer to such argument, that the prosecutor, in his closing argument, made the statements which form the second of appellant's complaints. In addition to what is shown by the principal opinion concerning this particular matter, I think there is significance and clarification in these statements which immediately follow the ruling complained of:

"MR. GRANT: Can it be made clear that he is referring to the fact that I did not argue to the defense of his having shot him during my argument?

"MR. WALLACH: That is what I meant, Mr. Grant. I am sorry I gave the wrong impression."

While, of course, it is not to be expected that identical language will ever be found in any of the cases, nevertheless there is striking similarity between that now questioned and some this court has had occasion to construe. The following is the offending argument: "Now, what is there to this case? Pelham Scott has been killed. Shot to death. There sits the man that shot him. Is there any doubt about that in anybody's mind? *Did they make any defense of it?*" Now, let this be contrasted with that involved in prior cases where the substance and effect seems to have been much the same. State v. Ruck, 194 Mo. 416, 440-442, 92 S. W. 706, 713-714, is a typical example. It

was there contended that the prosecutor's argument that the facts had not been denied had reference to no one but the defendant, and hence was a comment on his failure to testify. The argument was this, in part: "Here is a case that seems to me calls for the punishment that should be made to fit the crime. Here we have testimony undenied, *undisputed by no living or unliving* witness." (Emphasis mine.) It was held that the statement could not reasonably be construed as such a reference, the court saying: "A reading of the whole context shows that he was not discussing one specific piece of testimony as was the case in State v. Snyder, 182 Mo. 523, but was discussing the general result of the trial, as the evidence had taken a wide range, including many facts and circumstances testified to by many witnesses, and argued that this evidence was undenied and undisputed, but another way of stating that which had been shown beyond contradiction; that the facts were as he insisted they were. We think it is not fair to charge the counsel with having thus purposely and indirectly commented upon the failure of the defendant to testify, nor do we think it will do to give section 2638, Revised Statutes 1899, such a construction that counsel for the State may not in the course of an argument, if evidence of the State is uncontradicted, allude to it as undenied and undisputed. * * * Judge Harvey had not said that any witness had failed to testify, or that the defendant failed to testify, nor had he, as in the Snyder case, stated that only two parties were present, one of whom was the defendant, and that the other party had testified and his statement had not been denied. There the issue was narrowed down, and but one inference could have been drawn from the statement of the prosecuting attorney, that the defendant had not denied the statement of the other witnesses when he might have done so. Whereas in this case the assertion of the counsel for the State amounted to no more than an expression of his views as to the strength of the evidence in behalf of the State in a general way, and that it had not been rebutted, or there was nothing to ▮▮▮ the contrary. We do not think that the remark attributed to Judge Harvey was a violation of section 2638, and we would not be justified in reversing the cause on that ground alone."

In State v. Fields, 234 Mo. 615, 625-626, 138 S. W. 518, 520-521, it was held that the following argument was not open to the construction that it was a comment on the failure of the defendant to testify: "The state has proved certain facts; has brought a large number of witnesses before you whose testimony has not been controverted by the defendant's witnesses." It was there said: "The words 'the defendant's witnesses' are not fairly susceptible of such an interpretation, nor is there anything in the record to indicate that they were so intended. We hold that the prosecuting attorney was within the bounds of legitimate argument and that his comment was not

open to the objection made [that the defendant was not obliged to take the stand] or deserving of admonition from the court."

In State v. Gordon, 253 Mo. 510, 518, 161 S. W. 721, 723, the testimony of a witness (Bischoff) on a former trial was read to the jury. In arguing the case the prosecutor said that such witness "was not able to be here and we had to introduce his testimony and that testimony is conclusive and not contradicted by any evidence." Upon a consideration of such argument, this court said: "Appellant insists that this remark was a direct reference to defendant's failure to testify in his own behalf. We cannot agree with appellant's contention. This was in the nature of a general comment as to the weight and effect of the evidence of the witness Bischoff and it would be a forced construction that would interpret it as a reference to defendant's failure to testify." The Ruck and Field cases were cited with approval. See also State v. Hughes, 258 Mo. 264, 270, 167 S. W. 529, 531; State v. Myer, 259 Mo. 306, 318, 168 S. W. 717, 720; State v. DePriest, 283 Mo. 459, 468, 232 S. W. 83, 86; State v. McKeever, 339 Mo. 1066, 1085, 101 S. W. 2d 22, 30.

I think there was neither violation of the statute in question, nor error in the other matters complained of, and hence the judgment should be affirmed.

*Hyde, Hollingsworth* and *Dalton, JJ.,* and *Ellison, C. J.,* concur.

■ CONKLING, J. (dissenting).—I respectfully dissent from the principal opinion.

My reading of this transcript and a study of the argument made by the two state's counsel, and here contended by appellant to constitute separate references to the failure of the defendant to testify, have led me to the conclusion that the jury could have and did understand each of them as a reference to the failure of the defendant to personally testify for himself upon his trial.

Under the record before us of what occurred during the argument to the jury, it is my opinion that we cannot rule that by what the prosecuting attorney said, in the instance last mentioned in the principal opinion, "the prosecutor referred to the failure of *the defense as a whole* to combat the fact that appellant shot and killed officer Scott." I think that does not appear and that it is not inferable from the record. And following this latter reference the trial court said nothing to attempt to cure what had been argued by the prosecuting attorney. The court merely said, "The jury has heard the testimony and they will have to determine the issues."

Assuming, as ruled in the principal opinion, that no cited case "convicts the trial court of error in the instant case", yet, I think that is not the whole of the matter. I believe we yet have before us

the record of what occurred and that we have also the prohibition found in Sec. 546.270 of our statutes that "if the accused shall not avail himself * * * of his * * * right to testify * * * on the trial of the case, it shall not be * * * referred to by any attorney in the case."

I think that every instance of claimed reference to the failure of an accused to testify must be tested in the light (among others) of the language used, the context, the circumstances (retaliatory or otherwise), the inferences a jury could fairly draw or the clear and fair intendment of what was said, and all the pertinent background circumstances of the argument. And I further think it is neither material nor determinative that no cited case (or no adjudicated case) "convicts the trial court of error".

With the very highest regard for the erudition and the views of my brothers who have reached a contrary conclusion, I feel constrained to record my dissent. The facts of this case place it far beyond the borderline of extenuation. But I am of the view that the argument of the two state's counsel in these two instances were in clear violation of the right accorded the defendant under the above statute.